[No. 6,881.—In Bank.]

SAMUEL J. GOWER ET AL. v. JOHN ANDREW ET AL.

AGENT — FIDUCIARY TRUST — INJUNCTION. — Plaintiffs, as warehousemen, were occupying premises of which the lease was about to expire, and were negotiating with the lessor for a renewal at a reduced rental. Defendant A. was their clerk or agent, and had access to their books and papers, and knowledge of their business, and pending the plaintiffs' negotiation, without their knowledge, applied to the lessor and obtained a lease of the premises for himself and the defendant R., who had notice of the facts. In an action to compel the transfer of the lease, an application, made upon the above facts, for an injunction *pendente lite* to restrain the defendants from proceeding to recover the premises, was refused. *Held*, That the injunction should have been granted.

ID.—ID.—ID.—An agent or sub-agent who uses the information he has obtained in the course of his agency as a means of buying for himself, will be compelled to convey to the principal.

APPEAL from an order refusing to grant an injunction in the Twelfth District Court, City and County of San Francisco. DAINGERFIELD, J.

*Alfred A. Cohen,* for Appellants.

The defendant Andrew, by reason of his relation to the plaintiffs as above stated, was precluded from taking the lease from the defendant Hopkins for his own benefit. (Wood on Master and Servant, 221; *Dieringer* v. *Myer,* 42 Wisc. 312; *Thompson* v. *Havelock,* 1 Camp. 527; *McDonald* v. *Lord,* 26 How. 404; *Ward* v. *Beeton,* 19 L. R. Eq. Cas. 207.) Everything which an employer acquires by reason of his employment, except the compensation, if any, which is due to him from his employer, belongs to the latter. (Civ. Code, § 1985; *Edmonstone* v. *Hartshorn,* 19 N. Y. 9; Civ. Code, § 1988; Evans on Law of Principal and Agent, 243; *Massey* v. *Davies,* 2 Ves. Jr., Sumner ed. 317 and note; *Williamson* v. *Barbour,* 37 L. T., N. S., 698; Note 1 to Ewell's Evans on Agency, *243, 333, and cases cited; *Dodd* v. *Wakeman,* 26 N. J. Eq. 487; Story on Agency, 207 *et seq.; Dutton* v. *Willner,* 52 N. Y. 312; *Stoner* v. *Weiser,* 24 Iowa, 435; *Bain* v. *Brown,* 56 N. Y. 285; *Gillett* v. *Peppercorne,* 3 Beav. 83.) The possession of the premises, and the consequent reasonable expectation of renewal, was a valuable asset in the plaintiffs, which Andrew, from his position, was not permitted to interfere with. (*Grumley* v. *Webb,* 44 Mo. 446; *Rawe* v. *Chichester,* 2 Amb. 719; *Zilkin* v. *Carhart,* 3 Bradf. 376; 5 Bacon's Abr., tit. Leases, 677, cited *James* v. *Dean,* 11 Ves. 383.) From the fiduciary relation of Andrew to the plaintiffs, the obligation rested upon him to make a full and frank disclosure of what he was doing in the procurement of the lease. (1 Story's Eq. § 316 a; *Rubidoex* v. *Parks,* 48 Cal. 219, 220.) The agent owes to his principal the like fidelity which the trustee owes to his *cestui que trust.* (Cooley on Torts, 526.)

The general principle of equity is, that trustees and others sustaining a fiduciary and confidential relation, can not deal on their own account with the thing or the persons falling within that trust or relationship. (*Thorp* v. *McCullum,* 1 Gil. 625 and cases cited; *Wickliff* v. *Robinson,* 18 Ill. 146;

*Dennis* v. *McCagg*, 32 id. 444–445 ; 39 id. 608–609.)   No agent
is permitted to make a secret profit out of the conduct of his
agency.   (Evans' Agency, 215; Paley on Agency, 34–36, 51;
*Murphy* v. *Sloan*, 24 Miss. 658; *Tate* v. *Williamson*, Law R.,
2 Ch. Ap. Cas. 61; Bispham's Prin. of Eq., § 232.)   The rule
applies to all who occupy positions of trust and confidence.
(Bispham's Prin. of Eq., pp. 298, 299, §§ 92, 93; *Barron* v.
*Rhinelander*, 1 Johns. 550; *Parkest* v. *Alexander*, id. 394;
Paley on Agency, 10 *et seq.*; *Hamilton* v.*Wright*, 1 Bell's Ap.
Cas. 574.)   The knowledge which he acquires as a trustee is
of itself sufficient ground of disqualification.   (*Hamilton* v.
*Wright*, 1 Bell's Ap. Cas. 591; *Norris* v. *Tayloe*, 49 Ill. 18;
*Casey* v. *Casey*, 14 id. 112; *Tipping* v. *Clarke*, 2 Hare, 393.)   A
person acting as agent, or in any similar capacity, for a person
having an interest in a lease, can not renew for his own benefit.
(Lead. Cas. Eq. 68; *Edwards* v. *Lewis*, 3 Atk. 538; *Ex parte
James*, 8 Ves. 345; *Davoue* v. *Fanning*, 2 Johns. 252 ; Note to
*Ex parte Bennett*, 10 Ves. 381 a.)   The defendant Ross, having
knowledge of the relation of Andrew to the plaintiffs, is under
the same disability as Andrew.   (Bigelow on Frauds, 242;
*Parker* v. *Brooke*, 9 Ves. 587; *Hawleg* v. *Cramer*, 4 Cow. 718;
*Murray* v. *Ballou*, 1 Johns. 566; *Shepherd* v. *McEvers*, 4 id.
136; *Lockwood* v. *Mills*, 39 Ill. 609; *Norris* v. *Tayloe*, 49 id.
18; *Cumberland Coal and Iron Co. Sherman*, 30 Barb. 553;
Story's Eq. Jur., § 256 ; *Hugenin* v. *Baseley*, 14 Ves. 273 and
notes.   Opinion, p. 289.)   The relief prayed for, viz., that the
defendants Andrew and Ross be decreed to hold the lease as
trustees of the plaintiffs, and to assign to them, is the proper
remedy.   (Hill on Trustees, *144, *160, *161; *Brown* v.
*Lynch*, 1 Paige Ch. 147; *Pickett* v. *Loggon*, 14 Ves. 234 ;
*Keech* v. *Sanford*, known as the Rumford Market Case, re-
ported in 1 Lead. Cas. Eq. 65; *Grumley* v. *Webb*, 44 Mo. 444;
*Anderson* v. *Lemon*, 4 Seld. 239; *Gillenwater* v. *Miller*, 49
Miss. 166; *Charter* v. *Trevelyan*, 11 Cl. & Fin. 714 ; Story's Eq.
Jur., § 218.)

*P. G. Galpin*, for Respondent Hopkins.

The Court can not construct a new contract between the
lessor Hopkins and the plaintiffs, nor compel him to accept
them as his tenants.   Defendant Ross is an innocent pur-

chaser for a valuable consideration, and his rights can not be interfered with. Plaintiffs failed to get the lease, not through any action of Andrew's, but through their own laches and bad faith. There was no such relation between Andrew and the plaintiffs as would authorize the Court to fasten a trust upon the lease. As between the plaintiffs and Hopkins and his co-defendant Ross, the equities are clearly equal, and therefore the legal title must prevail.

*John Trehane,* for Respondents Andrew and Ross.

A Court of equity will not restrain a person from the assertion of title to real estate unless the case is entirely free from doubt. Where there is the least doubt the injunction will be denied. (High on Injunctions, 1st ed., §§ 63, 65, 68, 77, 257, 261, 324; Hilliard on Injunctions, c. 6, §§ 1 (p. 267), 5, 24, 48.) Before a constructive trust could be decreed in the case at bar, it must be made to appear beyond a doubt. (Paley on Agency, 34, 263; Bigelow on Fraud, 229.) The rule that an agent can not make himself an adverse party to his principal while the agency continues, applies only to such agents as are relied upon for counsel and direction, whose employment is a trust as well as a service. (Bigelow on Fraud, 231; 1 Parsons on Cont. 87; Paley on Agency, 12; *Deep River Mining Co.* v. *Fox,* 4 Ired. Eq. 70.) It affirmatively appears here that Andrew was not employed to get the lease, but that the plaintiffs undertook that business themselves; that so far from counseling with him, they never mentioned the matter to him at all, and that he never assumed or pretended to act for them in the matter. An employee is an agent only within the scope of his employment.

MYRICK, J.:

This is an appeal from an order refusing to grant an injunction. The facts as presented by the pleadings and affidavits are substantially as follows:

The plaintiffs were warehousemen, and as such occupied certain premises as tenants of the defendant Hopkins. The defendant Andrew was their clerk or agent in and about the business, and had access to their books and papers, and knowledge of the business and their customers. The lease under

which plaintiffs held the premises, at a monthly rental of four hundred dollars, was about to expire, viz., on the 1st of November, 1879. During some month or two prior to the expiration of the lease, plaintiffs were negotiating with Hopkins for a renewal of the lease at a reduced rental, but their minds had not met as to whether there would be a renewal. During the same time the defendant Andrew was, without the knowledge of plaintiffs, negotiating with Hopkins for a lease of the premises to himself and the defendant Ross. During such negotiations, defendant Andrew, without authority from plaintiffs, told Hopkins that plaintiffs would probably give up the warehouse, and if so he would take it at four hundred and fifty dollars per month. Hopkins, without receiving definite information from plaintiffs that they intended to surrender the premises, but believing that such would be the case, gave to the defendants Andrew and Ross a lease of the premises for four years from November 1st, 1879, at a monthly rental of four hundred and fifty dollars. Andrew's object in obtaining the lease was to enter into the business of warehousing with Ross on their own account; and Andrew solicited from some of the customers of plaintiffs at the warehouse their storage business, stating that " he had become the lessee of the warehouse because Gower & Gilman did not want it any longer." During all this time Andrew was in the employ of plaintiffs. As soon, however, as they learned that he had taken the lease he was dismissed.

We think the injunction should have been granted. The granting or refusing to grant an injunction is very much within the discretion of the Court to which the application is made; and an appellate Court will not interfere unless a right clearly appears to exist. We think, however, that the facts before us clearly show a case where the plaintiffs, if they shall finally substantiate those facts, will be entitled to relief. We understand it to be the duty of the employee to devote his entire acts, so far as his acts may affect the business of his employer, to the interests and service of the employer; that he can engage in no business detrimental to the business of the employer; and that he should in no case be permitted to do for his own benefit that which would have the effect of destroying the business to sustain and carry on which his serv-

ices have been secured.    An agent should not, any more than a trustee, adopt a course that will operate as an inducement to postpone the principal's interest to his own.    An agent or sub-agent who uses the information he has obtained in the course of his agency as a means of buying for himself, will be compelled to convey to the principal.    (*Elliott* v. *Merryman,* 1 Lead. Cas. Eq. 91.)

It may be said that Andrew was not the agent of plaintiffs so far as concerns the obtaining of a renewal of the lease; that he was not charged with the duty of obtaining a renewal; it must, however, be said that he was, by virtue of his employment, charged with the duty of furthering their interests, and with the duty of not using the information obtained by him as their employee to their detriment.    It seems to us that if Andrew desired to engage in the same business as his employers, on his own account, a very plain and very proper course was open to him, viz., to state to them all the facts, and ask them to determine whether they desired a renewal. By pursuing the course which he did, he gave to Hopkins an inducement not only not to give plaintiffs a renewal at a decreased rental, but also an inducement not to renew at the then rental; and he compelled plaintiffs to have an unknown competitor who based his action upon knowledge acquired by him while in their employ.    We do not think that this is equity or good conscience.

The order refusing the injunction is reversed.

ROSS, J., MCKEE, J., and MORRISON, C. J., concurred.

SHARPSTEIN, J., and MCKINSTRY, J., dissented.

THORNTON, J., dissenting:

The plaintiffs Gower and Gilman were partners, doing business as warehousemen in the City of San Francisco, and defendant Andrew was in their employment, to some extent in a confidential relation, and in receipt of a compensation paid to him by plaintiffs monthly.    While Andrew was so employed by the plaintiffs they were occupying and using a lot and the building on it, in the city above named, in their business, known as the Front Street Warehouse.    This was held

by them under a lease from defendent Hopkins, which expired on the 1st day of November, 1879. While Andrew was in the employment of the plaintiffs on the 29th of September, 1879, he obtained from Hopkins a lease, to himself and defendant Ross, of the lot and building above mentioned, for a term of four years, at a monthly rent of four hundred and fifty dollars. The plaintiffs instituted this action, alleging that Andrew was in their employment and holding confidential relations as regards them, when he obtained this lease, and that Ross was aware of all these facts when he became a party as co-lessee with Andrew, and asking for a judgment that Andrew and Ross hold the lease in trust for them, and that they be decreed to assign it to them, and also that defendants Andrew and Ross be enjoined during the pendency of this action from commencing any action at law to recover possession of the premises, or in any manner interfering with the quiet use and enjoyment by the plaintiffs of said premises, and that such injunction be made perpetual by the judgment of the Court.

A motion was made for an injunction *pendente lite*, which came on to be heard on the complaint, answers of Andrew, Ross, and Hopkins, and various affidavits which were read by the parties at the hearing. The Court below refused to make the restraining order, and from this order of refusal an appeal was prosecuted by plaintiffs to this Court.

Among the affidavits produced and read at the hearing of the motion, was one made by the defendant Hopkins, from which it appears that the lease to plaintiffs was executed by him (Hopkins) on the 28th of October, 1878, for the term of one year from the 1st day of November, 1878, at the rent of four hundred dollars per month; that early in September, 1879, prior to the 12th day thereof, Hopkins met Gilman, one of the plaintiffs, and a conversation ensued in regard to plaintiffs' leasing the premises again; that Gilman complained of the depression in business, and that they could not afford to pay so much rent as they were then paying, and stated that there were other warehouses to be had; that Hopkins did not agree to any reduction nor intimate any intention to raise the rent; that prior to this time Andrew had called on affiant and had stated that plaintiffs would probably give up

said warehouse, and if so, that he (Andrews) would like to take it, and would be willing to pay four hundred and fifty dollars rent; that affiant (Hopkins) postponed further consideration of the matter until he could ascertain what plaintiffs proposed to do, expressing an inclination to give them the preference, as they were tenants in possession; that in consequence of these conversations with Gilman and Andrew, Hopkins wrote and sent to the plaintiffs a letter as follows:

"SAN FRANCISCO, September 24th, 1879.
"MESSRS. GILMAN AND GOWER.

"GENTS.: Since the conversation had with Mr. Gilman, about the 10th or 12th of this month, concerning the rent of the Front-street warehouse, I understand that in your judgment the rates of storage do not warrant you in undertaking the present rate of rent for another lease.

"Will you let me know at your earliest convenience, say by Monday next, what is the highest sum you will pay per month for another term of one to four years? Respectfully,
                    "THERON R. HOPKINS."

To which letter deponent received from plaintiffs the following reply:

"SAN FRANCISCO, September 29th, 1879.
"THE. R. HOPKINS, ESQ., 614 LOMBARD STREET.

"DEAR SIR: In reply to your favor of yesterday, we would beg to call your attention to the following undoubted facts:

"1. Business has long been and continues depressed.

"2. Several parties who have obtained large reductions in rents, have an immense advantage over us in competing for the little business there is going.

"3. We see but little hope of any permanent improvement, as the existence and probable continuance and extension of the system of railway contracts will enable importers to supply all their wants as required, thereby doing away with the necessity of.keeping large stocks, and steadily. lessening the demand for storage accommodations.

"In the face of these facts, carefully considered, we think that three hundred dollars ($300) per month for the Front Street warehouse would be as much as we could afford to pay.

"We trust your ideas may coincide with ours, and we shall

be glad to hear your views in the matter as early as convenient to you.

"We remain, dear sir, yours, obediently,

"GOWER & GILMAN.

"P. S.—We have just heard, confidentially, that Mr. Staunch has got a reduction of two hundred and fifty dollars per month on his lease, which has still two years to run."

That on receipt of this letter, Hopkins informed Andrew, when he called to learn the result of the correspondence with the plaintiffs, that plaintiffs had declared themselves unable to pay over three hundred dollars per month; that he was unwilling to rent it at so low a price; that he inquired of Andrew if he would stand to his offer of four hundred and fifty dollars per month, to which he replied he would; that Andrew mentioned to him that Ross was going into partnership with him in the warehouse business.

Under these circumstances the lease was executed to Andrew and Ross on the 29th of September, 1879, as above stated.

Andrew, in his affidavit, which was also read at the hearing, states the circumstances from which he had concluded, when he spoke to Hopkins in August about renting the premises, that the plaintiffs intended to give up the premises when their lease expired, and there was evidence to support his statements. Andrew stated to Hopkins that he did not wish to have the premises unless the plaintiffs gave them up.

Conceding that Andrew had occupied such a relation towards the plaintiffs, that any lease obtained by him from Hopkins would be held by him in trust for Gower and Gilman, we are of the opinion that no reason existed after the letter of the 29th of September, above given, had been written and sent by them to and received by Hopkins, and communicated to Andrew, why such a consequence should follow. Hopkins concluded from the statements in that letter, and we think he had sufficient reason to conclude, that the plaintiffs no longer desired to lease the premises unless at such a rent as he would be unwilling to accept. The same reasons why the plaintiffs were unwilling to take a lease except at a re-

duced rent, were urged in the letter as in the previous conversation had been put forth by Gilman. They were urged, too, more specifically and at greater length. We can not perceive that this conclusion on the part of Hopkins was not reached on sufficient grounds, in consequence of the remark with which the letter closes. Why should Hopkins present his views to the plaintiffs as to their ability to pay more than three hundred dollars per month ? That was a subject of which they were more competent and better judges than he. They had been for some years engaged in the business, and had before them all the facts on which they could form a correct judgment as to what they were able to pay. The request was singular and unusual, and Hopkins no doubt deemed it useless to negotiate with them any longer. Deeming it, as he properly might, a refusal to concede to what he considered a fair rent for the premises, he acted on it as such, and executed the lease to Andrew and Ross.

Now it is contended, that it is the duty of the employee to the employer to do everything to advance his employer's interest, and to do nothing adverse to it while the relation continues. This may be considered to be a tenable position, sustained by the rules of law. But it can not be said that an employee is doing anything prejudicial or adverse to his employer's interests when he takes a lease of premises, after the term of the employer has ended, at a rent which the employer states that he can not afford to pay. The more correct deduction is, that he is advancing the interests of the employer, that he is saving money to his employer, and is not doing anything by which he can suffer damage or hurt. This is nothing more than Andrew did. He waited until his employers had refused to accede to a contract, which they had in effect declared would be injurious to them, and then took the lease.

As soon as this declaration was made by the letter on the 29th of September, there was nothing in the relations between Andrew and the plaintiffs, which bound his conscience so that he could not in equity take the lease from Hopkins, nor did anything occur afterwards. The statement in the affidavits of plaintiffs, that they did not intend the.letter of the 29th of September as a refusal to take the lease at four hundred

dollars a month, or even at four hundred and fifty dollars, is entitled to little weight when considered along with the deliberate statements made in that letter. There is no pretense in this case that Andrew ever was constituted, or ever held himself out, as an agent to procure a lease of the premises for the plaintiffs; therefore, no question arising out of such a state of facts, is before us here.

We find no error in the ruling of the Court below, and the order made by it should be affirmed.