## WILLIAM R. CLARK *vs.* RAYMOND P. DELANO.

Suffolk.    January 18, 1910. — February 24, 1910.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Agency*, Duty of broker.    *Trust*, Constructive.

A broker, who undertakes to procure a loan for an owner of land which is subject to a mortgage either by the giving of a new mortgage or by a pledge and assignment of the existing mortgage as security, if he honestly and continuously tries to obtain such a loan and is unsuccessful, is not precluded from buying the mortgaged property in good faith in his own behalf at a sale in foreclosure of the mortgage and procuring a new mortgage on it for his own benefit, his employment as a broker, which created a fiduciary relation between him and the owner of the land, having been terminated without fault on his part when it became too late to prevent the foreclosure sale.

BILL IN EQUITY, filed in the Supreme Judicial Court on August 2, 1909, by the surviving trustee under the will of William R. Clark, late of Boston, who as such trustee was on June 26, 1909, the owner, subject to a mortgage, of certain lots of land in that part of Boston called Dorchester, which on that

day were purchased by the defendant in his own behalf at a foreclosure sale for the sum of $6,500, which sum the defendant procured by making a new mortgage of the land, alleging that when the defendant purchased the land he was in the relation of broker to the plaintiff, by whom he had been employed to procure a new mortgage of the land for the benefit of the plaintiff in order to prevent a foreclosure of the then existing mortgage; praying that an injunction might issue restraining the defendant from conveying or encumbering the land, that the defendant might be ordered to convey the land to the plaintiff subject to the new mortgage for $6,500, and for further relief.

The case was referred to William Harold Hitchcock, Esquire, as master. He filed a report, of which the conclusion is stated in the opinion. Later the case came on to be heard upon the defendant's exceptions to the master's report before *Braley,* J., who made a final decree overruling the exceptions to the master's report and ordering that the defendant should convey the land to the plaintiff, subject to the new mortgage, upon certain conditions therein specified. The defendant appealed.

*S. W. C. Downey,* for the defendant.

*J. D. Graham,* for the plaintiff.

KNOWLTON, C. J. On June 3, 1909, the plaintiff was the owner of certain real estate in Boston, subject to a mortgage of $5,500 and interest, held by one Roberts, and to a lien for unpaid taxes. The mortgagee had previously requested payment of the mortgage debt, and on that day he began proceedings for a foreclosure of the mortgage by giving notice of a sale under a power in the mortgage, to take place on June 26, 1909. The plaintiff sought to raise money to pay the debt, either by giving a new mortgage or by procuring an assignment of the old mortgage as collateral security. With this in view he applied to several brokers, advertised in a newspaper, and personally solicited several individuals for a loan. Previously, before the end of the month of May, he had employed the defendant, who was a real estate broker, to act for him in endeavoring to procure the desired loan, subject to a right reserved to the plaintiff to employ other brokers and to use other means to procure the loan.

Between the date of this employment and June 18, the plaintiff and the defendant saw each other several times. On each

occasion the defendant reported that he had not been able to procure a loan, but spoke hopefully of the probability of ultimate success. The plaintiff did not at any time tell the defendant that the property was advertised for sale under the mortgage, and the defendant first learned of it by seeing a notice of the sale, just before June 18. On June 18 or 19, the parties met for the last time before the sale. The defendant then said he had not been able to secure a loan, and, referring to the foreclosure, advised the plaintiff to apply to his own bank if he wished to save the property. The plaintiff replied that he had done so without success, and asked the defendant to continue his efforts to procure the loan. To this request the defendant made no definite answer. The master found that the plaintiff believed and was warranted in believing that the defendant would continue his efforts. Nothing more was done by either party about the business. During the first part of the week before the sale, the plaintiff and the mortgagee met, and the plaintiff, in view of a recent payment by him of a part of the taxes on the property, asked the mortgagee to stop the proceedings for foreclosure. This the mortgagee declined to do, and he said that he supposed there would be no one at the sale, and that he (the mortgagee) would have to bid off the property in his own interest and that of the plaintiff. Relying upon this statement, the plaintiff did not attend the sale. On June 26 the sale was held according to the notice, the only persons present, besides the auctioneer, being the mortgagee, the defendant and a stranger. The defendant bid off the property for $6,500, the next highest bid of $6,000 having been made by the stranger. Subsequently the defendant obtained a mortgage loan of $6,500 upon the property from the Dorchester Trust Company, in which he was a stockholder and a member of the examining committee. On May 22, 1909, one Paul, another broker employed by the plaintiff, had applied to this company on behalf of the plaintiff for a loan of $6,000, to be secured by a mortgage on the land, and had been refused.

The defendant testified before the master that he conceived the idea of purchasing this property at the sale on the day before the sale, and definitely made up his mind to bid for it on the day of the sale. The master found that there was no evidence to warrant a conclusion that he entertained this purpose earlier

than the time that he stated. At the time of the sale the defendant had made no arrangement for obtaining the money necessary to purchase the property. He first made an application for a loan to the Dorchester Trust Company two days later. He had some property besides his stock in the trust company, and thought that he could obtain the money there. According to the master's report, there was no evidence before him that the defendant did not act in good faith in purchasing and mortgaging the property, under the circumstances stated, or that he did not believe that he had a right to do so. Solely as a conclusion from the facts stated in the report, the master found that, by undertaking to act as a broker to procure a loan for the plaintiff, the defendant entered into such a fiduciary relation to the plaintiff that he could not buy the property at the foreclosure sale for his own benefit, and give a mortgage to secure a loan for the whole purchase price, on his own account. The question is whether this conclusion of the master is correct.

There is no evidence that the defendant did not act in good faith in the interest of the plaintiff, in attempting to procure a loan. Up to the time appointed for the sale there is no ground on which the defendant can be held for any wrongful act or omission. When the property was offered for sale by the auctioneer and it was no longer possible to do anything for the benefit of the plaintiff, under his employment as a broker, was the defendant, by reason of that employment, in such a relation to the plaintiff as precluded him from bidding at the auction as any other person might do? This question must be answered in the negative. His employment was terminated by conditions beyond his control. When the auctioneer began the sale, there was nothing more that he could do for the plaintiff as a broker. In reference to the sale which was going on, he stood as if he had never been employed by the plaintiff. If a sale must be made, there was nothing in his buying which was inconsistent with his former relations to the plaintiff. He had never been employed to represent the plaintiff in any way in connection with the sale. His only employment was to procure a loan if he could, and if he succeeded the plaintiff doubtless would have prevented the sale; but when it was too late to prevent the sale, he was as free as anybody to become a bidder. In his purchase there was no

constructive trust for the plaintiff. *Collins* v. *Sullivan*, 135 Mass. 461. *O'Reiley* v. *Bevington*, 155 Mass. 72.

It makes no difference that he subsequently procured a loan upon the property on his own account. When he had become the purchaser, he stood in a new and independent relation. He might pay in cash if he found it convenient, or he might raise the money by a mortgage, or in any other legitimate way. His procuring a loan for himself, after his purchase, had no connection with his original employment.

*Decree reversed.*