ESSEX TRUST COMPANY *vs.* FREDERICK W. ENWRIGHT & another.

Essex.    December 2, 1912. — May 23, 1913.

PRESENT: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Agency,* Employee's duty of fidelity. *Equity Jurisdiction,* Constructive trust.
*Trust,* Constructive.    *Contract,* Of service.    *Newspaper.*

Where one, who is employed as a reporter on a newspaper, learns that the part
of a building in which the newspaper is printed is of peculiar value to his em-
ployer in carrying on his business, it is a breach of duty for him secretly to
obtain a lease of the premises and to hold them as his own to the injury of his
employer's property; and, if he does this, a person having the rights of his em-
ployer can maintain a suit in equity against him to have him declared a con-
structive trustee and ordered to assign the lease to the person having the rights
of his employer.

BILL IN EQUITY, filed in the Superior Court on November 3,
1911, by the trustee under a mortgage made to secure the bonds
of the Lynn Publishing Company, a corporation, against Frederick
W. Enwright and the Lynn Publishing Company, to enjoin the de-
fendant Enwright, as lessee under a lease from the International
Trust Company, from evicting the plaintiff or the Lynn Publishing
Company from certain premises on Willow Street in Lynn, where
a newspaper called the Lynn Evening News was published by
the plaintiff as trustee, and to have the defendant Enwright
declared a constructive trustee holding such lease for the benefit
of his former employer, the Lynn Publishing Company, and of
the plaintiff as mortgagee in possession, and also to have the de-
fendant ordered to assign such lease to the plaintiff.

The defendant Enwright in his answer asked that the bill
might be dismissed, and also filed a motion to dismiss. Certain
holders of the bonds secured by the mortgage made to the plain-
tiff as trustee filed a motion to be allowed to prosecute the suit
in the name of the plaintiff, as trustee, for the benefit of them-
selves and other bondholders.

The case was heard by *Jenney,* J. He denied the motion to
dismiss, and allowed the motion of the bondholders to be per-
mitted to prosecute the suit. On the facts found by him he made
an order that the bill should be dismissed with costs, and reported

the case for determination by this court as described in the opinion. If the order of the judge was correct, the bill was to be dismissed with costs; otherwise, such decree was to be entered as should be ordered by this court.

B. N. *Johnson*, (R. L. *Dana* with him,) for the plaintiff.

C. S. *Hill*, for the defendants.

LORING, J.   The question on which the decision in this case depends is this: In case a reporter on a newspaper in the course or by reason of his employment learns that the premises on which the business of publishing the paper is conducted are of peculiar value to his employer or one carrying on his business, has he the right without his employer's knowledge to take a lease of the premises and hold them as his own to the injury of his employer's property?

The case comes before us on a report without the evidence. The statement in the report of the facts of the case is in one or more material points somewhat meagre.

The material facts stated in the report were in substance as follows: The defendant Enwright, hereinafter called the defendant, was a reporter on a daily newspaper published in Lynn, which was mortgaged to the plaintiff trust company to secure an issue of bonds, the amount of which is not stated.  The business of making up and printing the newspaper was carried on in two stories and in the basement of a building in Lynn, of which two stories and basement the Lynn Publishing Company (the mortgagor) was a tenant at will.  The printing press of the Publishing Company was "situated in the basement upon a foundation of concrete, embedded in the earth underneath the building, and could not be removed from said basement and set up in some other place in less than two weeks' time, and at a very considerable expense.  While the press was being taken down and being set up in another place the paper could not be published unless it made arrangements for its printing from some other press, and it appeared in evidence that no press was in Lynn that could be used for that purpose in connection with the electrotyping plant of the company except after expensive alterations in the electrotyping plant."  "Outside of its machinery, type, fixtures and furniture, it depended for the value of its property on the good will of the business, and upon the ability to get out its paper daily."

On July 1, 1911, the Publishing Company defaulted on the mortgage interest. By the terms of the mortgage the mortgage trustee could not take possession until ninety days after the default. On Tuesday, October 3, 1911, the plaintiff trust company took possession and proceeded to take the necessary steps to foreclose its mortgage by a sale in accordance with its terms. The trust company continued the publication of the paper.

The defendant had been employed as a reporter by the mortgagor for a period not stated. He did not devote his whole time to the business and was paid "at the rate of five to seven dollars a week for such services as he rendered in gathering and reporting news." When the plaintiff trust company took possession on October 3, 1911, it continued to employ the defendant as a reporter. "About" that time the defendant applied to one Porter for a lease of the premises in which the business of publishing was conducted by his employer. Porter told him that he was the lessor of the second story only, and that the International Trust Company was the lessor of the first floor and the basement. Porter refused to give the defendant a lease of the second story, the premises owned by him. Thereupon, on October 4, 1911, the defendant applied to the agent of the trust company for a lease of the first floor and basement, telling the agent "that he represented parties who were going to take over the paper." "A few days later" a written lease from October 2 (October 1 being a Sunday) was delivered to the defendant for a term not stated, and on October 31 the defendant gave the plaintiff notice to quit on the following Friday, which was November 3.

The findings already stated establish the peculiar value which these premises had to the defendant's employer or to any one carrying on the employer's business of publishing this newspaper. And it is evident from the facts found by the judge who heard the case in the Superior Court that the defendant realized that. It is found that "during the summer after the interest had been defaulted, the defendant went to various bondholders and endeavored to buy their bonds," and that "he offered them fifty cents upon the dollar therefor," and that "after obtaining the lease he went to various bondholders and offered them twenty-five cents on the dollar" for the same bonds. It further is found that "he stated to various persons that the person who had

secured the lease would be the winner in the long run, and asked some of these persons if they were going to the funeral, meaning the funeral of the paper published by the publishing company."

It is not found directly as a fact, but it is the fair inference to be drawn from the facts found, that the defendant learned in the course or by reason of his employment of the peculiar value which these premises had for his employer. It was found directly (in effect) that knowledge of the fact that his employer was in arrears in the payment of rent came to the defendant by reason of his employment. That fact, however, is a fact of secondary importance.

The doctrine invoked by the plaintiff in this suit had its origin in two decisions by Lord Eldon. In *Yovatt* v. *Winyard*, 1 Jac. & W. 394, the defendant (formerly employed as a clerk by the plaintiff, who was a veterinary surgeon) was enjoined from using medicines compounded from the plaintiff's recipes which he (the defendant) had surreptitiously copied while in the plaintiff's employ. In *Abernethy* v. *Hutchinson*, 3 L. J. (O. S.) c. 209, the publication in the Lancet of lectures on surgery delivered by the plaintiff at St. Bartholomew's Hospital, which the defendants had obtained from the students attending the lectures, was enjoined. The ground on which Lord Eldon went in this case was subsequently stated by Turner, V. C., in these words: "I well remember that upon the first argument he refused to grant the injunction on the ground of copyright, Mr. Abernethy not being able to swear that the whole lecture was written; but that afterwards, on a second argument, he granted it on the ground of breach of confidence." See Turner, V. C., in *Morison* v. *Moat*, 9 Hare, 241, 257.

Since then the doctrine has been applied in England in a number of cases. In *Morison* v. *Moat*, 9 Hare, 241, the defendant was enjoined from using a secret formula for compounding a medicine which had been disclosed to him, in violation of a contract made with the originator of the formula. In *Tuck & Sons* v. *Priester*, 19 Q. B. D. 629, the defendant, who had been employed by the plaintiff to print two thousand copies of a picture belonging to him, was enjoined from selling further copies of it which he had taken surreptitiously. In *Pollard* v. *Photographic Co.* 40 Ch. D.

345, a similar decision was made; in that case the defendant printed for his own use further likenesses of the plaintiff from a negative which he had made when photographing the plaintiff in the ordinary course of his business as a photographer.  In *Helmore* v. *Smith,* 35 Ch. D. 449, a clerk was committed for contempt on its being shown that he had taken a copy of the customers of a business conducted by a receiver appointed by the court and that he had solicited their custom for a competing business which he had set up for himself.  A similar decision as to the use of a list of the plaintiff's customers surreptitiously copied by a clerk was made in *Robb* v. *Green,* [1895] 2 Q. B. 1. In *Merryweather* v. *Moore,* [1892] 2 Ch. 518, a clerk was enjoined from communicating to a subsequent employer the details of machinery manufactured by his former employer, the plaintiff; and in *Lamb* v. *Evans,* [1893] 1 Ch. 218, the defendants, who had been employed to secure advertisements for the plaintiff's Trades Directory and who by the terms of their employment furnished at their own expense the blocks and materials necessary for producing the advertisements, were enjoined from using the blocks and materials so obtained in aid of a competing directory. For two other cases where the doctrine was applied see *Tipping* v. *Clarke,* 2 Hare, 383, 393, and *Kirchner* v. *Gruban,* [1909] 1 Ch. 413, 422.  In the latest of these cases (*Kirchner* v. *Gruban,* [1909] 1 Ch. 413, 422), Eve, J., states the doctrine of these cases in these words: "I think it is abundantly clear upon the authority of *Robb* v. *Green,* ([1895] 2 Q. B. 315) that the real principle upon which the employee is restrained from making use of confidential information which he has gained in the employment of some other person is that there is in the contract of service subsisting between the employer and employee an implied contract on the part of the employee that he will not, after the service is determined, use information which he has gained while the service has been subsisting to the detriment of his former employer."

This doctrine was applied by this court in *Peabody* v. *Norfolk,* 98 Mass. 452.  In that case the plaintiff, having invented a process of manufacturing gunny cloth from jute butts, had built a factory where gunny cloth had been so manufactured.  The defendant Norfolk had been employed by him as an engineer in his factory, and had agreed not to disclose to others the con-

struction of the machinery. On leaving the plaintiff's employ Norfolk imparted the nature of the machinery to one Cook, who knew of Norfolk's agreement. Both were enjoined. The doctrine was recognized by this court in *Chadwick* v. *Covell*, 151 Mass. 190, and *Covell* v. *Chadwick*, 153 Mass. 263, which had to do with formulas for compounding medicines, and in the recent case of *American Stay Co.* v. *Delaney*, 211 Mass. 229.

There are two cases, one in California and the other in Illinois, which have gone as far in the application of this doctrine as we are asked to go in the case at bar. In *Gower* v. *Andrew*, 59 Cal. 119, the defendant, a clerk employed by the plaintiffs, who were warehousemen, secured a lease of the warehouse in which the business was conducted, behind his employers' backs by telling the owner of it that the "plaintiffs would probably give up the warehouse," and offering an advance of $50 a month in the rent. The defendant then began soliciting custom for himself as the successor of his employers. On this becoming known he was discharged by his employers and was ordered by the court to assign the lease to the plaintiffs. In *Davis* v. *Hamlin*, 108 Ill. 39, Davis, who was the defendant in the court below, was hired by Hamlin, the lessee of one of four important theatres in Chicago, as his business manager. A year and three months before Hamlin's lease expired Davis behind Hamlin's back secured for himself a lease (to begin on the expiration of Hamlin's lease) by giving $4,500 more rent a year. It appeared in evidence that Hamlin had built up a good will in connection with his theatre by ten years' occupancy. Davis was directed to hold the lease which he had secured as trustee for Hamlin.

The defendant has argued that he was not within this rule because the duty of securing a lease was not entrusted by his employer to him. The same contention was the main argument put forward in *Davis* v. *Hamlin*, and was true of the clerk in *Gower* v. *Andrew*. The complaint against the defendant is that he has made use of information which has come to him in his employment to the detriment of his employer. In our opinion that is enough to entitle the employer to equitable relief.

We find nothing in the cases cited by the defendant which calls for notice. There is one case not cited by the defendant which requires a word of explanation. We refer to *Clark* v.

*Delano,* 205 Mass. 224. The facts found by the master in that case were as follows: The plaintiff had employed the defendant as one of several brokers to secure a loan of the money necessary to prevent the foreclosure of a mortgage on his (the plaintiff's) land. The defendant was employed before the end of May. A foreclosure sale of the land was advertised for June 26. On June 18 the defendant learned from some one other than the plaintiff of the impending foreclosure sale. On June 18 or 19 he reported to the plaintiff that he had not been able to secure the loan. The plaintiff asked him to continue his efforts, to which the defendant made no answer, but the master found that the plaintiff was justified in believing that he intended to continue them. The plaintiff did not attend the foreclosure sale, relying on a statement by the mortgagee that he supposed that no one would attend and that he, the mortgagee, would have to bid the property in, "in his own interest and that of the plaintiff." The defendant bought the property for himself at the foreclosure sale, having conceived the idea of doing so the day before the sale. It was held that he had a right to do so. Of this case it is to be remarked in the first place that the defendant (the broker) did not forestall his employer by buying behind his back, but bought at a foreclosure sale in no way brought about by him, at which he had to compete with the plaintiff (his former employer) on equal terms. And what is of more importance, the land had no peculiar value to the employer, as the premises in question in the case at bar have to this plaintiff, and as the buildings in question in *Gower* v. *Andrew* and *Davis* v. *Hamlin* had to the plaintiffs in those cases. For these two reasons the defendant in *Clark* v. *Delano* was not taking advantage of information obtained in the course of his employment as to the peculiar value of the property to his employer by securing it for himself behind his employer's back, to his (the employer's) detriment.

The bill, which was originally filed by the trustee named in the mortgage, is now being prosecuted, by leave of court, in its name by the bondholders who bought in the property at the foreclosure sale. The foreclosure sale was had after the hearing in the Superior Court, but before the case was reported to this court. The defendant originally objected to this, but the objection has not been argued on the brief or at the bar, and we treat it as waived.

The plaintiff is entitled to a decree directing the defendant to assign to the plaintiff the lease obtained by him on being paid the amount of the rent, if any, paid by him under it, and to its costs. See *American Circular Loom Co.* v. *Wilson,* 198 Mass. 182, 206. But the plaintiff is under no obligation to the defendant as to the rent due from the Lynn Publishing Company (the mortgagor) to the International Trust Company and paid by the defendant to it.

A decree for the plaintiff on these terms must be settled in the Superior Court.

*So ordered.*