MAURICE STEINBERG, Plaintiff, v. MOLLIE STEINBERG et al.,
Defendants.

Supreme Court, Bronx Special Term, June, 1924.

**Master and servant — servants bound to serve master faithfully — action
to compel assignment of lease procured by employees of plaintiff pend-
ing renewal negotiations — defendant landlord executed lease with
sister of plaintiff with knowledge that she was plaintiff's employee —
sister must assign lease — plaintiff deemed to have reasonable expec-
tation of renewal — landlord knowingly took part in unlawful acts of
plaintiff's servants and will be compelled to accept plaintiff as tenant.**

Servants and employees are bound to serve their master or employer faithfully
in all matters coming within the scope of their employment.

Accordingly, a court of equity will compel an employee to assign a lease to her
employer, where it appears that the plaintiff requested his brother and sister,
who were his employees, to aid him in obtaining a renewal of a lease; that
during the plaintiff's absence from business, his sister successfully negotiated
with the defendant landlord for a renewal of the lease to her; and that the
landlord, at the time he executed the lease, knew that the sister was in plain-
tiff's employ.

Although as against his landlord the plaintiff had no legal right to a renewal of
the lease, as against all others, he had a reasonable expectation of a renewal
which the law regards as a valuable property right.

The defendant landlord, with knowledge that the plaintiff's sister was in plaintiff's
employ, knowingly took part in her unlawful act, and will be compelled to
accept the plaintiff as his tenant.

ACTION in equity against employees of plaintiff who procured
a lease to premises occupied by plaintiff pending negotiations by
him for renewal.

*Samuel D Cohen,* for the plaintiff.

*Abraham Freedman,* for the defendants Mollie and Robert
Steinberg.

*Alexander Holtzoff,* for the defendant Ostroff.

MULLAN, J. Plaintiff conducted several shops in which he sold
women's wearing apparel. His lease of the particular shop here
in question expired on May 1, 1924. The business done in that
shop had been highly and increasingly lucrative. During the
winter of 1923–24 the plaintiff applied to his lessor, the defendant
Ostroff (the lessee of the whole), for a renewal of the lease. He
says he came to terms with Ostroff. I find that the negotiations
had not reached that point, but that there is every reason to
believe that a bargain eventually would have been struck had it
not been for the faithlessness of plaintiff's sister and brother, who
are the other defendants. The sister and brother were in plaintiff's
employ, engaged solely to sell goods at the shop referred to.
During plaintiff's absence from the city, in March, and without

his knowledge, they successfully negotiated with Ostroff for a lease of the shop to the sister, the term to commence on May first, at the expiration of the lease held by plaintiff. The plaintiff brings this action to procure the relief that a court of equity customarily decrees in similar actions against disloyal trustees. The plaintiff endeavored to show that the sister and brother had been asked by plaintiff to aid him in procuring the renewal lease from Ostroff, thus seeking to turn the sister and brother into disloyal express agents. If his case were to depend upon a favorable finding upon that issue I should feel compelled to decide against him, as the evidence appears to me to be strongly against that contention. He stands in no need, however, of such a finding. It was of the essence of the duty of the sister and brother, as employees and servants of the plaintiff, to serve him faithfully in all matters that came within the scope of the service for which they were paid. A part of that duty was, quite obviously, to aid plaintiff in his endeavor to continue to carry on the business that gave them employment and which they knew to be highly profitable. Although, as against his lessor, plaintiff had no legal right to a renewal of the lease, as against all others he had that reasonable expectation of a renewal which " the law recognizes * * * as a valuable property right." *Thayer* v. *Leggett*, 229 N. Y. 152, 156. By their clandestine dealings with Ostroff, the sister and brother sought to make it impossible for plaintiff to make use of that property right, not, of course, to harm him, but to benefit themselves. Their act was in destruction of the very business they were paid to promote and advance. It is argued that as the sister and brother held merely subordinate positions that imposed no executive duties, they were not in situations that called for the sort or degree of trust and confidence upon which plaintiff must rely in order to succeed herein. I think the plain and simple answer is that they were no more at liberty to destroy the plaintiff's expectation of a renewal of his lease than they were to destroy the stockings and gloves and other articles they were employed to sell. Strangely enough, there does not appear to be any reported case in this state that touches such a situation, although the Illinois case, *infra*, was cited with approval in *Thayer* v. *Leggett, supra*. In *Davis* v. *Hamlin*, 108 Ill. 39, in *Essex Trust Co.* v. *Enwright*, 214 Mass. 507, and in *Gower* v. *Andrew*, 59 Cal. 119, it was held that an employee who, behind the back of his employer, took a lease of the place in which he was serving, must assign it to the employer upon the latter's demand. In the *Davis* case the disloyal employee was a manager. In the *Essex* case he was a newspaper reporter. In the *Gower* case he was a shipping clerk. I have no hesitancy

in holding that the sister must assign the lease to plaintiff. Ostroff contends that as he was under no legal duty to give a renewal to plaintiff he was at complete liberty to deal with the sister, and that he cannot be compelled to accept plaintiff as his tenant. I am of the opinion that as he knew the sister was an employee of plaintiff, and as it must be presumed that he knew the law, he knowingly took part in her unlawful act, and is in no different situation from that of a seller who participates in the fraud of a faithless express agent by agreeing to transfer to the agent as an individual the title to a thing the agent was, to the knowledge of the seller, under the duty of purchasing for his principal. Submit findings on or before June twenty-first.

Judgment accordingly.