## SHELL PETROLEUM CORPORATION v. PRATT.

### No. 841–N.

District Court, D. Kansas, Second Division.
Feb. 16, 1938.

C. P. Berry (of Thompson, Mitchell, Thompson & Young) of St. Louis, Mo., and Vermilion, Evans, Carey & Lilleston, of Wichita, Kan., for plaintiff.

Holmes & Adams, of Wichita, Kan., for defendant.

HOPKINS, District Judge.

The basis of this action is an alleged breach of a confidential relation, breach of terms of employment, and appropriation by an agent to his own advantage and use of facts and information acquired by him while engaged or working for his principal.

Shell Petroleum Corporation engages in the business of producing gas and oil and selling the products derived therefrom. In this connection it acquires oil and gas leases from owners of land and from owners of mineral interests in land. As a guide in acquiring leases it employs geologists who explore and investigate geological formations to determine likelihood of land containing oil or gas. Defendant E. L. Pratt served Shell as a geologist from January, 1925, to October, 1934. From February 15, 1928, he served as a district geologist with authority throughout the entire state of Kansas. It was Pratt's duty to investigate land areas throughout the state and report to Shell his findings, conclusions, and recommendations, and the facts as to the likelihood of oil or gas, and advisability of Shell acquiring leases.

A rule of Pratt's employment, applicable alike to all employees of Shell, and

of which Pratt had notice, forbade the purchase of "oil and gas leases or any interest therein or royalties." Immediate dismissal was made the penalty for violation of either the letter or spirit of the rule.

During the period of his employment, Pratt acquired for himself oil and gas mineral interests and interests in leases. He was discharged September 30, 1934. Shell contends Pratt violated not merely the rule or terms of his employment, but appropriated to his own use property which he was employed to obtain for Shell and in violation of the continuous trust and confidence which it had reposed in him. Shell asks that the conduct of its agent be viewed in the light of principles of equity governing the relation, and that Pratt be made to account. It seeks to impress with a trust and have conveyed or decreed to it all interests acquired by Pratt as gifts; to have conveyed or decreed to it interests for which Pratt paid a consideration, upon tender by Shell of the amount so paid, Shell at its option to be permitted to refuse any or all of such interests; that Pratt pay Shell the value of properties conveyed away by Pratt or the amount received therefor, less cost to Pratt of any such interests; that an accounting be had of moneys paid Pratt by other companies on account of oil or gas interests acquired by Pratt; and that Pratt account to Shell for moneys received or due from Shell by reason of such interests.

Pratt on the other hand contends that Shell at no time sought to acquire interests by him acquired nor in the vicinity thereof; denies the necessity of keeping secret, geological advice and conclusions after Shell had secured leases it desired; alleges that acquisition by Pratt of interests which Shell did not wish to acquire was known to and assented to by Shell; denies violation of confidence; admits acquisition of interests not desired by Shell and denies such interests were competitive with or detrimental to Shell; denies use of knowledge confidential or secret in character; and admits receipt of royalties which otherwise would have been paid to owners of the land.

The evidence is largely covered by stipulation, and there is no serious conflict in the oral testimony. The stipulation describes in detail the interests acquired, source of acquisition and where consideration was paid, the amount thereof; stipulates that Pratt "acquired for himself, personally, oil and gas mineral interests, and interests in oil and gas leases."

It discloses six transactions whereby Pratt acquired by assignment under the assumed name of S. W. Tilden, interests in oil and gas leases. He paid $150 for a one-fourth interest in one lease covering 80 acres. An eighth interest in a lease of 20 acres he procured for $1,700.55. One-sixteenth interest in a lease of 80 acres and one-eighth interest in two leases covering 240 acres were assigned to Pratt apparently without consideration. For a one-eighth interest in a 21-acre lease Pratt with three others bound himself to drill a well. This lease was developed at separate cost to Pratt of $24,818.37.

Further analysis of the evidence discloses that in the period from April, 1928, to December, 1933, in 41 separate transactions, defendant acquired fractional mineral interests ranging from $\frac{1}{4}$ to $\frac{1}{48}$ in approximately 4,800 acres of land situated in the counties of Harvey, McPherson, Reno, Rice, and Sedgwick.

In eighteen of these transactions, involving approximately 2,200 acres of land, the conveyances were gifts to defendant. Excepting one, they were made by either C. M. Neilson or H. L. Turner and were taken by defendant under the assumed names of Jack R. Carzine and S. W. Tilden.

In nineteen of the transactions involving approximately 2350 acres of land, defendant paid a total consideration of $47,616.17. These conveyances, excepting two, were made by H. L. Turner to defendant under the name of S. W. Tilden or Claude Kirk Heath. One was taken in his true name.

During defendant's employment, plaintiff paid him in excess of $25,000, and at the time of trial had impounded and then held in excess of $13,000 accruing as royalty payments at the customary rates, on oil produced from mineral interests acquired by defendant while in such employment.

█ It has been said that a confidential relation involves two elements—"That of secrecy and that of trust and confidence; * * * a relation of parties in which one is bound to act for the benefit of the other, and can take no advantage to himself from his acts relating to the interest of the other." People v. Palmer, 152 N.Y. 217, 46 N.E. 328, 329. Such relationships as those of trustee and cestui que trust, Trice v. Com-

stock, 8 Cir., 121 F. 620, 626, 61 L.R.A. 176, principal and agent, Alaniz v. Casenave, 91 Cal. 41, 27 P. 521, employer and employee, Essex Trust Co. v. Enwright, 214 Mass. 507, 102 N.E. 441, 47 L.R.A.,N.S., 567; Gower v. Andrew, 59 Cal. 119, 43 Am.Rep. 242, are considered fiduciary and confidential in character.

■ Likely no one would think, of contending other than that Pratt stood in a confidential relation to his principal and employer, Shell. He was district geologist with the entire state of Kansas within his jurisdiction. It was his duty to investigate and search out likely oil-producing lands and report to plaintiff his findings. He was the "head man in his office in Kansas." It was his duty to correlate all of the geological investigations carried on by Shell in Kansas, and "pass it on to his immediate chief, the division geologist at Tulsa, Oklahoma, with his recommendations and comments." R. E. Shutt, manager of the exploration department with jurisdiction over Oklahoma, Kansas, and the Panhandle, testified: "Mr. Pratt made recommendations as to buying leases in any given location. The customary plan was that Pratt phoned the information to the Tulsa office and discussed the geological structure that he had phoned and made his specific recommendations where to buy and the amount of money to pay for the piece."

This witness stated Shell's exploratory work in Kansas during the years 1927 to 1933 consisted primarily of core drill work; that the Shell Company spent over $900,000 on core drill work alone. Pratt was in charge of all core drilling. Information obtained from core drilling was never made public, and was, in fact, considered to be highly confidential. Shutt testified: "Geological information obtained from core drilling is known by the man in the field, the district geologist and myself. In my immediate office at Tulsa, besides myself, my assistant and my confidential draftsman, are the only ones who have access to the files. * * * I have full access to it, but the other two men have it in a lesser way. * * * The reports that Mr. Pratt made to my office are kept in a special safe and only the two men mentioned and myself have access to them."

Pratt's findings and his recommendations as to location of wells were considered first by the division office at Tulsa and often were considered by the St. Louis office and by the company's office at Hague, Holland.

Here was a great company with operations extending over half the globe. It was without close contact and supervision of its servants. It expended heavily, not only for core drilling and other exploratory work, but other great sums of money in the acquisition and development of leases, and, so far as its Kansas operations were concerned, in reliance upon Pratt's recommendations and upon his loyalty and fidelity. Pratt occupied a position highly fiduciary in character, and he owed Shell the duty of absolute loyalty. In Meinhard v. Salmon, 249 N.Y. 458, at page 464, 164 N.E. 545, 546, 62 A.L.R. 1, Chief Judge Cardozo stated the rule applicable here: "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honestly alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. Wendt v. Fischer, 243 N.Y. 439, 444, 154 N.E. 303. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd."

If Pratt by his acts and conduct breached that duty, betrayed the confidence reposed, he should be compelled to hand over to Shell, less his actual outlay, the sum total of his gains so acquired, and a court of equity would be remiss in its duty to decree otherwise.

■ The question is, then, Did Pratt breach the relation? It is admitted he acquired and developed leases and acquired fractional mineral interests. Shell contends that it is sufficient to establish merely a breach of the confidential relation, and that when a breach is established a case is made against defendant. As I view the law applicable here, a breach of the relation may be said to be established when it is established that Pratt placed himself in a position under which his personal interests were antagonistic to those of Shell, under which there was a clash or conflict between personal interests and those of his principal, a position inconsistent with his employment, or one actually or potentially injurious to his employer, or that he acted fraudulently.

In Restatement, Agency, section 395, the rule is thus stated: "An agent is subject to a duty to the principal not to use or to communicate information confidentially given him by the principal or acquired by him during the course of or on account of his agency or in violation of his duties as agent, in competition with or to the injury of the principal * * * unless the information is a matter of general knowledge."

In Trice v. Comstock, 8 Cir., 121 F. 620, 623, 61 L.R.A. 176, Judge Sanborn said: "From the agreement which underlies and conditions these fiduciary relations, the law both implies a contract and imposes a duty that the servant shall be faithful to his master, the attorney to his client, the agent to his principal, the trustee to his cestui que trust, that each shall work and act with an eye single to the interest of his correlate, and that no one of them shall use the interest or knowledge which he acquires through the relation so as to defeat or hinder the other party to it in accomplishing any of the purposes for which it was created."

Essex Trust Co. v. Enwright, 214 Mass. 507, 102 N.E. 441, 47 L.R.A.,N.S., 567, holds that a reporter on a newspaper may not take a lease of the premises and hold them as his own, to the injury of his employer's property.

Bedford Coal & Coke Co. v. Parke County Coal Co., 44 Ind.App. 390, 89 N.E. 412 uses this language: "It follows as a necessary conclusion from the principle last stated that the agent must not put himself into such relations that his interests become antagonistic to those of his principal."

Turner v. Kirkwood, 10 Cir., 49 F.2d 590, 594 states the rule: "The law * * * requires that a fiduciary refrain from voluntarily placing himself in a position where his duty as fiduciary and his private interests conflict. So, the test is not whether the correlate has suffered an injury but whether there has been a clash between the personal interests and the duties of the fiduciary."

Frances-Mohawk Mining Co. v. McKay, 37 Nev. 191, 141 P. 456, 458, quotes from Wald's Pollock on Contracts, as follows: "An agent cannot be allowed to put himself in a position in which his interest and his duty are in conflict."

The Tenth Circuit Court of Appeals has expressed the rule in the case of Baker Oil Tools v. Burch, 71 F.2d 31, 37, quoting from Leading Cases in Equity as follows: "Wherever one is placed in such relation to another, by the act or consent of that other, or the act of a third person, or the law, that he becomes interested for him, or interested with him in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated."

Tested by these rules, what disposition is to be made of the issues here?

In acquiring interests in leases and obligating himself and others to drill oil wells Pratt placed himself in direct competition with Shell, and although he may have acted with all good faith, keeping uppermost in his mind his duty to his principal, he nevertheless took on a position inconsistent with his employment, fraught with possibilities of clash between personal interests on the one hand and absolute duty to Shell on the other. This he could not do and expect to retain the benefits. Shell, in my opinion, is entitled to a decree vesting in it title to all interests in oil and gas leases acquired by Pratt in violation of his contract of employment and of the relation arising therefrom on reimbursement of Pratt for his expenditures, as tendered by the pleadings.

In respect to mineral interests acquired by Pratt, a. more difficult question would seem to be presented. Pratt contends the nature of such a conveyance eliminates the possibility of clash of interests; that conveyance of a mineral interest operates as a severance of the mineral from the land and passes title to the mineral in place, while an oil and gas lease such as Shell was engaged in acquiring does not effect a severance of the minerals, Burden v. Gypsy Oil Co., 141 Kan. 147, 40 P.2d 463; and that these holdings could not be antagonistic to Shell for the simple reason Shell did not seek to acquire mineral interests. This contention takes on a forceful aspect when considered in connection with the stipulation of facts, and the undisputed testimony, much of it from plaintiff's witnesses, Shell officers. The stipulation states Shell "acquires Oil and gas leases." George L. Rollins, general vice president of Shell, testified: "It was the policy of the company not to purchase mineral interests." The stipulation further reads: "Plaintiff did not acquire or attempt to acquire any mineral interest in any of the land in which defendant acquired mineral interests or in the

vicinity thereof, but as to said land and land in the vicinity. thereof plaintiff's activity was confined solely to securing oil and gas leases and to the development thereof."

Pratt testified: "I have never known Shell to buy a minor fractional interest in a lease. I recommended that the company attempt to acquire mineral interests * * * the management flatly refused to consider it. * * * After that I acquired some mineral interests. I took them in another name for fear I might lose my job."

Money accruing to Pratt by reason of mineral interests represents money that otherwise would have been paid the landowners. The stipulation covers this point: "Plaintiff's various oil and gas leases provided for the payment to the respective lessors, landowners, therein, a royalty of one-eighth of all oil and gas produced thereunder; that said sums above mentioned so paid defendant or impounded by plaintiff was and is a part of the royalty accruing under the terms of said leases; that plaintiff was neither required to nor did pay any greater sum of oil and gas or moneys therefor as royalty under its leases by reason of defendant having acquired portions of lessors' mineral interests covered by plaintiff's leases than it would have been required to pay to said lessors had defendant not acquired any interests in said minerals."

R. E. Shutt, manager of the exploration department of Shell at Tulsa, gave testimony in part as follows: "As to Kansas, while Mr. Pratt was district geologist a great majority of our geological information came through his hands. * * * I cannot mention one instance that the company did not get the honest recommendation of Mr. Pratt. He was discharged because he acquired mineral interests. * * * I do not know of any oil and gas lease, interest therein, or undivided interest in minerals that was acquired by Mr. Pratt, which our company desired to purchase or otherwise acquire. I do know that while Mr. Pratt was connected with our company, it secured perhaps the most productive areas in Kansas that have been discovered to date. In many cases the mineral interest acquired by Mr. Pratt under Shell leases was acquired some years after the Shell leases were taken. I do not know of any case where he acquired mineral interest in a tract of land which the Shell subsequently leased for oil and gas purposes. * * *"

But I prefer to take the view that in acquiring mineral interests Pratt assumed a position inconsistent with his employment; a position fraught with potential injury to Shell. Shell leased and drilled pursuant to recommendations made by Pratt. Pratt's holdings proved valuable and productive. With riches thus at hand, and impelled by the lure of more, it might not have been by chance alone that a valuable property was open to acquisition by Pratt a year after Shell had acquired its holdings in the locality. Since many of such interests were gifts to Pratt and without cost. to him, there is the possibility that Pratt might decide to test the value of his holdings by recommending to Shell that it drill a well in the locality. Illustrations of potential injury to Shell flowing from Pratt's conduct might be added without end to show the inconsistency of his position.

But any doubts I may have are entirely dispelled by a consideration of Pratt's methods and conduct. He above all others knew whether his personal interests were likely to come in conflict with his duty to Shell. He chose secrecy and deception under circumstances which demanded of him candor and full disclosure. He used different fictitious names under which he acquired the holdings in dispute, received royalty payments, rented a post office box, and carried on extensive banking transactions, borrowing $25,000 to $30,000. Furthermore, in my opinion the evidence will support a finding that he utilized valuable information belonging to Shell in acquiring these mineral interests.

In a case such as this a principal has several appropriate remedies. It is well settled that resort may be had to an equitable action to enforce a constructive trust. In Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378, 380, it was said: "When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. Moore v. Crawford, 130 U.S. 122, 132, 9 S. Ct. 447, 32 L.Ed. 878; Pomeroy, Eq.Jur. § 1053." And see, Buffum v. Barcloux Co., 289 U.S. 227, 236, 53 S. Ct. 539,. 542, 77 L.Ed. 1140.; U. S. v. Carter, 217 U.S. 286, 306, 30 S.Ct. 515, 54 L.Ed. 769, 19 Ann.Cas. 594; Irving Trust Co. v. Deutsch, 2 Cir., 73 F.2d 121, 123; Johnson v. Umsted, 8 Cir., 64 F.2d 316, 320; Trice v. Comstock, 8 Cir., 121 F. .620, 61 L.R.A. 176. The rule is recognized in the cases of Robertson v. Chapman, 152 U.S. 673, 14 S.Ct. 741, 38 L.Ed. 592, and Latta v.

Kilbourn, 150 U.S. 524, 550, 14 S.Ct. 201, 37 L.Ed. 1169, cited by defendant.

■ Plaintiff by its bill of complaint offers to reimburse defendant for his expenditures in connection with such of the properties as plaintiff desires to take. This is eminently fair. Defendant will be deprived merely of the fruits of his mistaken venture and without further personal loss.

Findings and conclusions and a decree in accordance with the foregoing have been entered.