UNITED STATES v. LORING et al.[1]

(District Court, N. D. Illinois.    January 2, 1884.)

1. POST OFFICES—POWER OF CONGRESS TO REGULATE USE OF MAILS—CRIMINAL OFFENSES.

The constitutional power of congress to establish post offices and post roads embraces the regulation of the entire postal system, and includes as a necessary incident the right to determine what may be carried in the mails, and what shall not be, and to impose penalties for the violation of its regulations to be enforced, through the courts, such as are contained in Rev. St. § 5480.[2]

2. SAME—OFFENSE AGAINST POSTAL LAWS—INDICTMENT.

An indictment under Rev. St. § 5480, charging that defendants devised a scheme to defraud by pretending to have established a fund which they designated as "Fund W," to be used for purposes of speculating, and by soliciting the sending and intrusting to them of money for investment in such fund, for the purpose and with the intent of converting such money to their own use, in fraud of those sending it, in pursuance of which scheme defendants placed letters and packets in a post office, or received letters and packets from a post office, sufficiently informs the defendants of the particular scheme relied on as fraudulent, and also enables the court to know that, if consummated as charged, such scheme would result in the perpetration of a fraud.

3. SAME—GENERAL AVERMENTS OF INDICTMENT—OFFICE OF BILL OF PARTICULARS.

An indictment under Rev. St. § 5480, is not insufficient as being too general, because it avers that defendant placed in the post office letters and packets addressed to persons to the grand jurors unknown, nor because it does not set out the contents of such letters or packets, the remedy of defendants if they desire more specific information being by motion for a bill of particulars.

4. SAME—ESSENTIALS OF OFFENSE.

It is not necessary that the contents of letters charged to have been placed in a post office in pursuance of a scheme to defraud should show the fraudulent character of the scheme, and hence such letters need not be set out in an indictment.

---

[1] This case has been heretofore reported in Pagin's Federal Precedents & Forms, 225, and is now published in this series, so as to include therein all circuit and district court cases elsewhere reported which have been inadvertently omitted from the Federal Reporter or the Federal Cases.

[2] As to nonmailable matter in general, see note to Timmons v. United States, 30 C. C. A. 79.

5. SAME—SPECIFYING DETAILS OF FRAUD.

An indictment charging that defendants placed letters in a post office in pursuance of a scheme to defraud, by inducing others to send them money with intent to convert such money to their own use, need not specify the manner in which such conversion was to be accomplished.

6. SAME—SCHEME TO DEFRAUD.

A scheme need not be unlawful in itself, or constitute a fraud, either at common law or by statute, to be a "scheme or artifice to defraud," within Rev. St. § 5480. It is enough if its purpose is to defraud other persons of their money.

7. SAME—CHARGING SEPARATE OFFENSES IN SAME INDICTMENT.

The last clause of Rev. St. § 5480, authorizing the joining of offenses to the number of three in the same indictment, means offenses relating to separate frauds, and is not a limitation of the right to include in one indictment any number of counts charging different acts in pursuance of the same fraudulent scheme.

W. C. Goudy and E. A. Storrs, for defendants.

BLODGETT, District Judge. In this case, upon the rendition of the verdict, motions for a new trial and in arrest of judgment were made by the defendants. These motions have been argued together, and the positions of counsel will be considered and disposed of as on one motion. The points made on the motion in arrest involve the sufficiency of the indictment, and will be first considered. These points are: (1) That section 5480, under which this indictment is framed, is unconstitutional, on the ground that congress has no power, under that clause of the constitution which authorizes it to "establish post offices and post roads," to pass the act in question; that this section of the Revised Statutes and section 3929 are to be construed together, and, when so construed, clothe the postmaster general, who is a mere executive officer, with judicial powers, which powers can only be exercised by a properly constituted court or judicial officer. (2) That the first, second, seventh, and eighth counts of the indictment, on which the defendants were found guilty by the jury, are insufficient, because the scheme or artifice to defraud is not so particularly and fully described as is required by the rules of criminal pleading; and that the letters or packets alleged to have been placed in or taken or received from a post office by the defendants are not set out in full, or so fully as to identify them. It is further urged that the indictment should have charged how and in what manner the money was to be converted to the defendants' own use; and that the indictment should have shown a scheme or artifice to defraud which was unlawful, either by statute or by common law; and, also, that the indictment is bad because it charges four different offenses, while the last clause of section 5480 allows only three offenses to be joined in one indictment.

As to the first point, questioning the constitutionality of section 5480, the principle involved seems to me to be fully settled in Ex parte Jackson, 96 U. S. 727. While that was a case arising under a different section of the postal laws,—the one referring to the sending of matter concerning lotteries through the mail,—the same reasoning which is there used applies, as it seems to me, with equal force to support the provisions of section 5480. In that case, the supreme court, speaking by Mr. Justice Field, said:

"The power vested in congress to establish post offices and post roads has been construed, since the foundation of the government, to authorize not merely the designation of the roads over which the mail shall be carried, and the offices where letters and other documents shall be received, to be distributed or forwarded, but the carriage of the mail, and all measures necessary to secure its safe and speedy transit and the prompt delivery of its contents. The validity of legislation prescribing what shall be carried, and its weight and form, and the charges to which it shall be subjected, has never been questioned. * * * The power possessed by congress embraces the regulation of the entire postal system of the country. The right to designate what shall be carried necessarily involves the right to determine what shall be excluded. * * * Whilst regulations excluding matter from the mail cannot be enforced in a way which would require or permit an examination into letters or sealed packages subject to letter postage, without warrant issued on oath or affirmation to search for prohibited matter, they may be enforced upon competent evidence of their violation obtained in other ways, as from the parties receiving the letters or packages, or from agents depositing them in the post office, or others cognizant of the fact; and, as to objectionable printed matter which is open to examination, the regulations may be enforced in the same way, by the imposition of penalties for their violation, through the courts, and in some cases by the direct action of the officers of the postal service. * * * In excluding various articles from the mail, the object, of course, has not been to interfere with the freedom of the press, or with any other rights of the people, but to refuse its facilities for the distribution of matter deemed injurious to the public morals."

Indeed, it would seem too plain to require argument that the power of congress to establish post offices and post roads not only involves the right to create and maintain our postal system, but carries with it, as a necessary incident to that power, the right of congress to determine what shall be carried or transported by means of such postal system, and certainly that congress has the right to enact that no matter shall be carried in the mail for the purpose of furthering a crime or fraud.

The validity of section 3929—which empowers the postmaster general, on satisfactory evidence that any person is engaged in conducting a fraudulent lottery, gift enterprise, or scheme for the distribution of money or real or personal property by lot, chance, or drawing, or is conducting any other scheme or device for obtaining money through the mails by reason of false or fraudulent pretenses, to instruct the postmaster of any office at which any registered letter arrives to return such registered letter to the postmaster of the office at which such letter was originally mailed, to be by the latter postmaster returned to the sender thereof—is in no sense that I can see involved in this case. The two sections are not to be construed or enforced together; and if this section 3929 is not within the constitutional power of congress, or impinges upon any other provisions of the constitution, so as to make it unconstitutional, and the postmaster general has so acted under it as to injure these defendants or either of them, they have their remedy against him; but the question of the lawfulness of his action cannot come into this case. That is, if section 3929 is void for want of constitutional authority in congress to enact it, then the powers delegated to the postmaster general by it are also void and inoperative, and would furnish no defense in a civil suit against him for his acts. But that presents a widely different question from the right to punish a person who uses the mails for purposes of fraud, which is the scope and intent of section 5480.

I now come to the second point urged, questioning the sufficiency of the counts of the indictment on which the verdict of the jury was rendered. The statute in question reads as follows:

"If any person having devised or intending to devise, any scheme or artifice to defraud, or be effected by opening or intending to open correspondence or communication with any other person, whether resident within or outside of the United States, or by inciting such other person to open communication with the person so devising or intending, shall in and for executing such scheme or artifice, or attempting so to do, place any letter or packet in any post-office of the United States, or take or receive any therefrom, such person so misusing the post-office establishment shall be punishable," etc.

The first count charges that the defendants—

"Pretending, under the style and firm name of Flemming & Merriam, to be commission merchants there, and to be managers of an association or fund by them pretended to exist under the designation of 'Flemming & Merriam's Mutual Co-operative Fund W.' for speculating and trading in grain, provisions, and stocks, had devised a scheme and artifice to induce and procure the sending and intrusting of moneys to them by divers other persons, for investment and employment thereof for those persons, respectively, in such pretended association or fund, and the same moneys fraudulently to convert to the own use of them, the said Frank L. Loring and John Flemming, and thereby to defraud the several persons who should so send and intrust the same; which said scheme and artifice then and there was a scheme and artifice to be effected by opening correspondence and communication with those persons, respectively, by means of the post-office establishment of the said United States, and by inciting those persons, respectively, to open communication with them, the said Frank L. Loring and John Flemming (under the style and firm name of Flemming & Merriam), by means of the said post-office establishment. And that the said Frank L. Loring and John Flemming, then and there, so having devised the said scheme and artifice, in and for executing the same, and attempting so to do, unlawfully did place in the post office of the said United States at Chicago, aforesaid, divers letters and packets, to wit, ten letters and ten packets, directed, respectively, to divers persons and addresses to the said grand jurors as yet unknown, against," etc.

The remaining three counts set out the scheme or artifice to defraud in substantially the same terms, and only differ from the count just quoted by charging, in the second, that the defendants, for the purpose of executing their scheme to defraud, "did take and receive from the post office of the said United States at Chicago aforesaid divers letters and packets, to wit, ten letters and ten packets, each directed to Flemming & Merriam, at Chicago, aforesaid"; while the seventh count charges that the defendants sent through the post office at Chicago, for the purpose of executing their scheme of fraud, a letter and packet directed to Lydia Remington, at North La Crosse, Wis.; and the eighth charges that the defendants took from the post office at Chicago "a certain letter then lately before sent by the said Lydia Remington from North La Crosse, Wis., to the address of Flemming & Merriam, at Chicago, aforesaid."

The object of an indictment is twofold: First, to inform the defendant of the offense with which he is charged with such particularity as will enable him to prepare for his trial; second, so to define and identify the offense that the defendant may, if convicted or acquitted, be able to defend himself, in case he be indicted again for the same offense, by pleading the record of such conviction or acquittal.

Under this statute, the scheme or artifice to defraud, it seems to me, should be so fully stated as to enable the court to see, as a matter of

law, that, if consummated, a fraud would be perpetrated. The charge in this indictment is that these defendants had devised a scheme or artifice to defraud, which they designated or called "Flemming & Merriam's Mutual Co-operative Fund W," for speculating and trading in grain, provisions, and stocks. The defendants, for a description of their offense, are referred by the indictment to the description or name which they themselves gave to their scheme, whatever it may be called, and are, it seems to me, fully informed of the transaction which will be called in question on the trial, by this description, which is the "Flemming & Merriam Fund W," as devised and managed by the defendants. That is charged to be the scheme or artifice to defraud, by inducing persons to send to them or intrust them with money for the purpose of investment in Fund W, to be used for speculating, etc.; and the purpose of the defendants fraudulently to convert to their own use the money so sent or intrusted to them makes the fraudulent scheme or artifice set out in this count. There can be no room for doubt that, if this scheme is consummated,—if persons are induced to send money to the defendants for investment in Fund W, and if it was the purpose of the defendants to convert such money to their own use, either by not investing it in Fund W, or by so investing it, and then converting to their own use the whole fund,—a fraud on the persons so sending such money would be accomplished.

Suppose a man was indicted for stealing a horse which he called "Charley"; that would seem a sufficient description by which to identify the horse, and inform the defendant what particular horse he was charged with stealing. Suppose, under this statute, the scheme or artifice charged to be that the defendants, pretending it was their purpose to buy horses, thereby sought to induce persons to send money to them for that purpose, but in fact intended fraudulently to convert such money to their own use; there can be no doubt but that fraud, or a scheme to defraud, would be charged. The gist of this offense does not consist in the fraudulent scheme alone, but in using the post-office establishment of the United States for the purpose of executing a fraud. It should therefore be made to appear with reasonable and fair certainty what the fraud was, and that the post-office establishment was to be used in the furtherance or accomplishment of such fraud; and this, it seems to me, is all which the rules of good pleading require.

As to the suggestion that the letters or packets alleged to have been placed in or taken from the post office are not sufficiently described, the first count charges the defendants with placing in the post office at Chicago 10 letters and 10 packets, addressed to persons to the grand jurors unknown; and the second count charges the defendants with taking from the post office at Chicago 10 letters and 10 packets, addressed to Flemming & Merriam. There is no proof that the grand jurors knew to whom or by whom these letters and packets were addressed, at the time when this indictment was found. If the defendants, for the purpose of preparing for trial, wished a fuller description of these letters, they could have obtained it by a bill of particulars, as the practice of this court for many years has been to require a bill of particulars to be furnished in ample time by the district

attorney, on application of the defendant, in order to enable him to prepare for trial; and this practice seems to be sanctioned by well-considered authorities.

In Whart. Cr. Pl. & Prac. § 702, it is said:

"Wherever the indictment is so general as to give the defendant inadequate notice of the charge he is expected to meet, the court, on his application, will require the prosecution to furnish him with a bill of particulars of the evidence intended to be relied on. That indictments may be thus general, and yet in entire conformity with precedents, has been heretofore abundantly shown. It is allowable to indict a man as a common barrator, or as a common seller of intoxicating liquors, or as assaulting a person unknown, or as conspiring with persons unknown to cheat and defraud the prosecutor by divers false tokens and pretenses; and in none of these cases is the allegation of time material; so that the defendant is obliged to meet the charge of an offense apparently undesignated, committed at a time which is not designated at all. Hence has arisen the practice of requiring in such cases bills of particulars; and the adoption of such bills, instead of the exacting of increased particularity in indictments, is productive of several advantages. It prevents much cumbrous special pleading, and consequent failures of justice, as no demurrer lies to bills of particulars; and it gives the defendant, in plain, unartificial language, notice of the charge he is to meet."

Section 703:

"As has already been seen, bills of particulars may be ordered under the same general count in conspiracies, under indictments for being a common seller of liquors, and under indictments for embezzlement, and for being a common barrator or a common scold. But it is proper, in order to justify the ordering by the court of such a bill, that the defendant should make an affidavit that he is, from the generality of the indictment, unable duly to prepare himself for his defense."

Section 705:

"It is said that the allowance of bills of particulars is within the discretion of the presiding judge, and is not subject of error; yet, whenever a bill of particulars is a substitute for special averments in an indictment, error should be entertained. The same right of exception allowed to the defendant in the one case should be allowed, unless there be a statutory impediment, in the other. The appellate court should have the power of determining whether there is enough filed against the defendant to put him on his trial."

I do not think the pleader was obliged to set out these letters in full in the indictment, or give the substance of their contents, nor that it should appear from the letters that they were a part of a fraudulent scheme. Letters or circulars in execution of a fraudulent scheme might appear on their face to be wholly innocent, and in all respects part of a legitimate transaction; but if sent through the mails, for the purpose of effecting a fraudulent artifice, an offense under this statute is committed. The letters, for illustration, remitting dividends in this Fund W, if sent (which is wholly a matter of proof) for the purpose of inducing the persons to whom sent to intrust the defendants with more money, or allow that already sent to remain, with the intent and ultimate purpose of the defendants to convert all or any of this money so obtained to their own use, would be as clearly within the inhibition of this statute as a letter of an accomplice, fully disclosing the fraudulent methods of the scheme or artifice. It seems to me enough if the defendants are told by the indictment to whom they sent letters, and from whom they received letters, through the post office. The first two counts do not state to whom the letters were sent, nor

from whom they were received, but the grand jurors state to the court that they were sent to persons to the grand jurors unknown. If the defendants wished a particular description of the letters and packets which the prosecution would offer in evidence under these two counts, they should have applied to the court for a bill of particulars, in apt time; and, under the practice of the court, they would have been entitled to such a description as would enable them to identify the letters, or know what letters they were to meet and explain, if necessary.

It is further urged that this indictment does not state how the money was to be converted to the use of the defendants. It does not seem to me to be a necessary part of this indictment that the pleader should state how the money was to be converted. It is sufficient if the defendants are charged with intending to convert to their own use the money which other persons should be induced to send to them. Wherever the defendants might conceal this money, however they might dispose of it, if they treated it as their own money, converted it to their own use, and intended to do so when they received it, the fraud on the persons sending the money was completely perpetrated. To require the prosecution to state minutely the details of converting or concealing this money would be to involve it in a maze of minute details, which it probably could not prove. The prosecution is not bound to follow the money beyond its application to a purpose to which the person sending it did not intend it to be applied; is not bound to follow the money through all the devious and artful ways by which those perpetrating the fraud intend to conceal it, so that it shall be beyond the reach of those to whom it actually belongs.

Nor is it necessary that the scheme or artifice devised should be in itself unlawful. If the scheme was fraudulent,—if the purpose was to get money from other persons, under pretense of investing it for such persons, and not so to invest it, but to apply it to the use of the defendants,—the case is within the statute. The object of the law was to prevent persons having fraudulent designs on others from using the post office as a means of effecting such fraud. It need not, in my opinion, be a fraud either at common law or by statute. It is enough if it was a scheme or purpose to defraud any persons of their money. Some of the states of this Union prohibit lotteries, and make it a crime to conduct a lottery; others legalize lotteries, and give them their affirmative legislation and sanction, for the support of public enterprises, or for the purpose of private gain; and yet all matter concerning lotteries, whether legal or illegal, is by law excluded from the mail. It is a misdemeanor to place such matter in the post office; and that has been held to be a constitutional law.

As to the last objection,—that the indictment in question charges the defendants with four offenses, when the last clause of the statute provides that the indictment, information, or complaint may severally charge offenses to the number of three, when committed within the same six calendar months, which, it is claimed, is a limitation upon the right to include more than three offenses in the same indictment,— I can only say that this clause is somewhat difficult of construction; but I can only construe it to mean, and do so construe it, that three separate offenses, that is, three separate frauds, may be charged in the

same indictment. The indictment in this case contains four counts, charging the defendants with mailing letters in consummation or execution of one fraud only. It seems to me that, under this statute, if these defendants, for illustration, had been indicted, not only for using the post office in the execution of the artifice or scheme known as "Fund W," but also other counts had been added, charging them with misuse of the post office in the execution of schemes known as "Fund H," and "Fund K," they could all have been joined in the same indictment; which is a fair illustration of the construction which I gave, and the only one I can give, to that clause of this section.

I have now, I think, noticed all the points made against the indictment, and, after a full and careful re-examination of these objections, I am content to abide by the rulings made on the trial, in which I sustained these four counts. I am well aware that cases are to be found in the books which, if followed, would seem to require me to hold this indictment substantially defective; but most of these cases, so far as I have been able to examine them, were decided by courts which held to a much more artificial and technical rule of pleading in criminal cases than the rule followed by the federal courts, or upon statutes so widely differing in their scope and purpose from the one in question as to afford but little, if any, light for the purposes of this case.

This indictment seems to me to follow the rule laid down by Mr. Justice Harlan in U. S. v. Simmons, 96 U. S. 362:

"When the offense is purely statutory, it is, as a general rule, sufficient in the indictment to charge the defendant with acts coming fully within the statutory description, in the substantial words of the statute, without any further extension of the matter. * * * But to this general rule there is the qualification, fundamental in the law of criminal procedure, that the accused must be apprised by the indictment of the nature of the accusation against him, to the end that he may prepare his defense, and plead the judgment as a bar to any subsequent prosecution for the same offense."

So in U. S. v. Carll, 105 U. S. 612, it was said by Mr. Justice Gray, speaking for the court:

"In an indictment upon a statute, it is not sufficient to set forth the offense in the words of the statute, unless those words, of themselves, fully and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished."

This indictment seems to me to inform the accused, with a reasonable certainty, of the nature of the accusation, so as to enable them to prepare their defense, and also seems to be so definite in its statements as to enable them, if acquitted or convicted, to plead the judgment on this verdict in bar of any future prosecution for this offense.

As to the errors claimed to have been committed by the court on the trial in the admission of improper testimony, especially that in regard to the dealings of these defendants with Fund H and Fund K, and the portions of the charge which have been criticised, I need only say that I do not find in those rulings or in the charge any such substantial error as seems to me to entitle these defendants to a new trial. The nature of the case was such that it seemed to require the allowing of a wide range of testimony; and I endeavored by the charge distinctly and clearly to inform the jury that while other matters, not necessarily a part of the defendants' dealings with Fund W, were admitted

in evidence, yet they were only admitted for the purpose of showing the intent of the defendants; and this, I think, I was justified by the authorities in doing.