UNITED STATES v. PROCTER & GAMBLE CO. et al.

No. 15782.

District Court, D. Massachusetts.

Nov. 9, 1942.

677

Edmund J. Brandon, U. S. Atty., of Boston, Mass., and Joseph M. Hargedon, Asst. U. S. Atty., of Lawrence, Mass., for United States.

Marcien Jenckes, Joseph Wentworth, and Carter Lee (of Choate, Hall & Stewart), all of Boston, Mass., for Procter & Gamble Mfg. Co., Procter & Gamble Distributing Co., and Procter & Gamble Co.

James W. Flood and James C. Reilly (of Gaston, Snow, Rice & Boyd), both of Boston, Mass., for Smelser, Lamping & Knappenberger.

SWEENEY, District Judge.

Six of the defendants have filed demurrers to the indictment, and pleas of the statute of limitations with reference to Counts 1 to 9 and Count 40. These defendants are Procter & Gamble Company, The Procter & Gamble Distributing Company, The Procter & Gamble Manufacturing

Company, Raymond J. Lamping, D. Paul Smelser, and Cleo W. Knappenberger. In addition the defendant Smelser has filed a plea in abatement, a motion to inspect and obtain a copy of the grand jury minutes, a motion that the court inspect the grand jury minutes, and a motion to quash the indictment.

## I. The Demurrers

■ The six demurrers are sufficiently similar to allow them to be treated as one. They attack the indictment on the principal ground that the offenses charged therein are not schemes to defraud within the meaning of 18 U.S.C.A. § 338. While there are decisions which seem to limit the use of the statute to schemes which would deprive a victim of his goods through actionable deceit practised upon him (see Naponiello v. United States, 7 Cir., 291 F. 1008; United States v. Brown, 2 Cir., 79 F.2d 321), the recent tendency of the courts is to construe the statute rather broadly. See United States v. McKay, D.C., 45 F.Supp. 1007; United States v. Buckner, 2 Cir., 108 F.2d 921; Shushan v. United States, 5 Cir., 117 F.2d 110, 115. In the last-named case the court specifically said: "A scheme to get money unfairly by obtaining and then betraying the confidence of another, or by corrupting one who acts for another or advises him, would be a scheme to defraud though no lies were told."

The decisions broadly construing the scope of this statute seem to be in keeping with its purpose. It was intended that this law would "prevent persons having fraudulent designs on others from using the post office as a means of effecting such fraud." United States v. Loring, D.C., 91 F. 881, 887.

■ Broadly, "fraud" has been defined as "any artifice whereby he who practises it gains, or attempts to gain, some undue advantage to himself, or to work some wrong or do some injury to another, by means of a representation which he knows to be false, or of an act which he knows to be against right or in violation of some positive duty." Commonwealth v. Tuckerman, 10 Gray, Mass., 173, 203, cited with approval in Commonwealth v. O'Brien, 305 Mass. 393, 397, 398, 26 N.E.2d 235. But, as was stated in Foshay v. United States, 8 Cir., 68 F.2d 205, 211: "To try to delimit 'fraud' by definition would tend to reward subtle and ingenious circumvention and is not done."

The alleged scheme to defraud covered by the counts of this indictment consists of the payment of gratuities or bribes by the defendant Procter & Gamble Company, its subsidiaries and agents, to certain employees of Lever Brothers Company in exchange for which the employees obtained from their employer possession of certain experimental cakes of soap, secret processes, formulas, facts and figures, etc., belonging to Lever Brothers Company, which they turned over to the Procter & Gamble Company, its agents and subsidiaries.

■ The normal relationship of employer and employee implies that the employee will be loyal and honest in all his actions with or on behalf of his employer, and that he will not wrongfully divulge to others the confidential information, trade secrets, etc., belonging to his employer. See Restatement of the Law of Agency, Section 395, Comment: a. and b.; American Stay Co. v. Delaney, 211 Mass. 229, 233, 97 N.E. 911, Ann.Cas.1913B, 509; Essex Trust Co. v. Enwright, 214 Mass. 507, 102 N.E. 441, 47 L.R.A.,N.S., 567; Mechem, Agency, 2d Ed., §§ 1188, 1211, 1233, 1234. When one tampers with that relationship for the purpose of causing the employee to breach his duty he in effect is defrauding the employer of a lawful right. The actual deception that is practised is in the continued representation of the employee to the employer that he is honest and loyal to the employer's interests. The employee, in using the employment relationship for the express purpose of carrying out a scheme to obtain his employer's confidential information and other property, as alleged in the indictment, would be guilty of deliberately producing a false impression on his employer in order to cheat him. Such conduct would constitute a positive fraud within the definition of that term given in Smith v. Richards, 13 Pet. 26, 10 L.Ed. 42, 47, where the court quoted with approval from 1 Story's Equity, 201, 202, as follows: " 'Where the party intentionally, or by design, misrepresents a material fact, or produces a false impression, in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him, in every such case there is a positive fraud, in the truest sense of the terms * * *. And the misrepresentation may be as well by deeds or acts, as by words—by artifices to mislead, as by positive assertions.' "

In an old case, Roxburgh v. M'Arthur, 3 Scot.Sess. (2d Series) 556 (1841), one

of the judges said: "If it is said to be a man's duty not to betray the secrets of his employer, and he is made to do so, that is fraud in the eye of the law." While that was a civil action for fraud and the statement was made by way of dictum, nevertheless, the court adopts that language as its understanding of fraud as it pertains to this indictment.

■ The other grounds urged in the demurrers are equally untenable. The indictment sets forth in great detail and with sufficient particularity the fraud upon which the Government will rely. There is nothing to the contention that the indictment does not describe money or property belonging to Lever Brothers Company within the meaning of 18 U.S.C.A. § 338.

■ There is also nothing to the contention that the alleged scheme is only one to commit the crime of larceny or some other crime, but not one to defraud within the meaning of the mail fraud statute. The indictment clearly alleges that the means contemplated and used in carrying out the scheme to obtain the secret information and property from Lever Brothers Company were the bribing of the latter's employees, and the continuance by them of the employment relationship in order to continue with their illegal design. Since a material part of the alleged scheme involved the element of trick and overreaching, the fact that it also contemplated the commission of a crime not within 18 U.S.C.A. § 338 would in no way prevent the scheme as a whole from coming within its scope. Fasulo v. United States, 272 U.S. 620, 47 S.Ct. 200, 71 L.Ed. 443; Muench v. United States, 8 Cir., 96 F.2d 332, 335; Jamerson v. United States, 7 Cir., 66 F.2d 569, 573.

■ Although in many of the counts the use of mails is seemingly a mere incident to the perpetration of the alleged scheme to defraud, it is, nevertheless, clearly shown to have been contemplated and employed as an essential step in carrying out the general scheme. Hart v. United States, 5 Cir., 112 F.2d 128, 131 and cases cited. Each of the demurrers filed is therefore overruled.

II. Pleas of the Statute of Limitations to Counts 1 to 9, Inclusive

■ The substantive offenses charged in these counts all occurred more than three years prior to the date of the indictment's return. Except in the case of Lamping and Knappenberger, the statute of limitations stands as a bar to the prosecution of these counts of the indictment. As to the defendants Lamping and Knappenberger, it appears from an affidavit filed by the United States Attorney that these persons were fugitives from justice between the time when the offenses were committed and the filing of the indictment, and they, therefore, cannot claim the benefit of the statute of limitations. Brouse v. United States, 1 Cir., 68 F.2d 294; 18 U.S.C.A. §§ 582, 583. The pleas as to these two defendants are dismissed. As to the others, the pleas stand as a good and sufficient bar to the prosecution of these nine counts against them. This refers to the counts in and of themselves as they may be substantive offenses. In so far as they are related to Count 40, which is a conspiracy count, they are to be retained as allegations of overt acts under that count.

III. Pleas of the Statute of Limitations as to Count 40

■ The pleas of the statute of limitations as to Count 40 are dismissed, as a reading of that count clearly shows that it describes one continuing conspiracy during the period described in the count. The defendants' contention that there were three separate conspiracies encompassed within Count 40 does not hold water. It is an ingenious division of time for the sole purpose of attacking the indictment. Compare: United States v. Harding, 65 App.D.C. 161, 81 F.2d 563, 566, 567. The pleas as to all defendants are therefore dismissed.

IV. Smelser Plea in Abatement

■ In this plea the defendant Smelser complains that he ought not to be proceeded against, because he was compelled to testify before the grand jury, and that he did not waive immunity. A close reading of his plea discloses that he merely appeared before the grand jury, and read to it a prepared statement which was addressed to the grand jury in which he stated that he had not brought the records that had been subpoenaed through him, because they were not in his possession. Upon inquiry as to where the records were, he read another prepared statement to the grand jury in which he asserted that he would not answer, on the advice of counsel, because any answer he might give might tend to incriminate him. In other words, he refused to testify before the grand jury. Having refused to testify before the grand

jury, except as to stating his name and the other matters referred to above, he cannot now be heard to say that he has testified before it in any legal sense. Compare O'Connell v. United States, 2 Cir., 40 F.2d 201, 205. None of his rights have been invaded. The plea in abatement is therefore dismissed.

## V. Motion of Smelser to Quash Indictment

■ This motion is denied as there was no evidence submitted to the court in support of the defendant's statement.

## VI. Motions of Smelser for Inspection of Grand Jury Minutes

■ These two motions are directed, first, to the inspection by the court of the grand jury minutes, and, secondly, to an inspection of the grand jury minutes by the defendant or his attorney and to compel the United States Attorney to furnish this defendant with a copy of such minutes. In the absence of evidence of irregularity there is no right in this defendant to either inspect or have supplied to him a copy of the grand jury minutes or to require the court to make such inspection. This court is not called upon to pass on the type of evidence heard by the grand jury, nor to rule in advance of trial on the merits as to what will or will not be competent evidence at that trial. There is a presumption that the proceedings of the grand jury were regular. Mulloney v. United States, 1 Cir., 79 F.2d 566, 580. In the absence of a contrary showing, this defendant has no right to either inspect or obtain a copy of the grand jury minutes. Neither does the court feel compelled or inclined to make such inspection. The motions are therefore denied.