UNITED STATES

v.

**Rickie SIMPKINS, 134 46 6541, Hospitalman Third Class (E–4), U.S. Navy.**

**NMCM 85 4428.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 13 May 1985.

Decided 17 July 1986.

Lt Col Richard E. Ouellette, USMC, Appellate Defense Counsel.

Lt Geraldine H. Casey, JAGC, USNR, Appellate Defense Counsel.

Lt Aaron Santa Anna, JAGC, USNR, Appellate Government Counsel.

Before KERCHEVAL, Senior Judge, and RAPP and GRANT, Judge.

GRANT, Judge:

Contrary to his pleas, appellant was convicted of one specification of stealing a Pentax camera, valued at $250.00 (Charge I) and of two separate specifications of obstructing justice (Charge II), in violation of, respectively, Articles 121 and 134, Uni-

form Code of Military Justice (UCMJ) 10 U.S.C. §§ 921, 934. He was sentenced to confinement for five months, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority disapproved confinement in excess of 114 days, but otherwise approved the remainder of the sentence as adjudged. We will consider the errors alleged by the appellant on appeal in the order assigned.

## I

THE TRIAL JUDGE IMPROPERLY DENIED THE APPELLANT'S MOTION TO DISMISS CHARGE II FOR FAILURE OF THE TWO SPECIFICATIONS TO STATE OFFENSES.

The specifications at issue read as follows:

Charge II. Violation of the UCMJ, Article 134.

Specification 1: In that Hospitalman Third Class Rickie SIMPKINS, U.S. Navy, Naval Hospital, Beaufort, South Carolina, did, on board Naval Hospital, Beaufort, South Carolina, on or about 18 April 1985, wrongfully endeavor to impede an investigation by the Naval Investigative Service into allegations of larceny of a camera by the said Hospitalman Third Class SIMPKINS, when he had reason to believe there would be criminal proceedings pending, by wrongfully saying to Seaman Sharon JACOBS, U.S. Navy, a material witness in the said investigation; "Did NIS talk to you?; don't say anything about me taking the camera," or words to that effect.

Specification 2: In that Hospitalman Third Class Rickie SIMPKINS, U.S. Navy, Naval Hospital, Beaufort, South Carolina, did, on board Naval Hospital, Beaufort, South Carolina, on numerous occasions between on or about 27 March 1985 and 20 April 1985, wrongfully endeavor to impede an investigation by the Naval Investigative Service into allegations of larceny of a camera by the said Hospitalman Third Class SIMPKINS, when he had reason to believe there would be criminal proceedings pending,

by wrongfully saying to Seaman Crystal BIRTS, U.S. Navy, a material witness in the said investigation; "Keep quiet or lie about me stealing the camera; there is no evidence if you don't say anything; you and I can discredit JACOBS; just tell NIS I was carrying this gray bag instead of the stolen camera," or words to that effect.

■ The law applicable to the sufficiency of alleging an offense is well established. Every element of the offense must be alleged in the specification either directly or by fair implication. *See United States v. Mayo*, 12 M.J. 286 (C.M.A.1982). Such a requirement assures the appellant is provided notice of the criminal offense against which he must defend, *United States v. Schwarz*, 15 M.J. 109, 111 (C.M.A.1983), and that an accused will not be subject to a second trial for the same offense after acquittal or conviction of the offense charged, *United States v. Hoskins*, 17 M.J. 134 (C.M.A.1984). Accordingly, testing the sufficiency of the specifications requires, at the outset, an examination of the elements of the offenses alleged. The *Manual for Courts-Martial, United States, 1984* (MCM), Part IV, paragraph 96b, sets forth the elements necessary to establish the offense of obstructing justice, in violation of Article 134, UCMJ, as follows:

b. *Elements.*

(1) That the accused wrongfully did a certain act;

(2) That the accused did so in the case of a certain person against whom the accused had reason to believe there were or would be criminal proceedings pending;

(3) That the act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Paragraph 96c provides, in pertinent part:

c. *Explanation.* This offense may be based on conduct that occurred before

preferral of charges. Actual obstruction of justice is not an element of this offense.... Examples of obstruction of justice include wrongfully influencing, intimidating, impeding, or injuring a witness, a person acting on charges under this chapter, an investigating officer under R.C.M. 406, or a party; and by means of bribery, intimidation, misrepresentation, or force or threat of force delaying or preventing communication of information relating to a violation of any criminal statute of the United States to a person authorized by a department, agency, or armed force of the United States to conduct or engage in investigations or prosecutions of such offenses; or endeavoring to do so....

The appellant alleges the specifications are defective for failure of the Government to allege that the delay or prevention of the communication of information relating to a violation of any criminal statute of the United States was effected through "bribery, intimidation, misrepresentation, force or threat of force," and further, that the specification failed to "even allege an attempted obstruction of justice...." The appellant's argument is premised on paragraph 96c, *supra*, in which examples of obstructing justice are separated by a semicolon and joined by the conjunction "and" rather than "or," with the connotation that

the Article was intended to proscribe the wrongful influencing, intimidating, impeding, or injuring of witnesses, or other specified persons, *only by means of "bribery, intimidation, misrepresentation, or force or threat of force* delaying or preventing communication of information" as alleged. (Emphasis added.) We believe, however, such a narrow interpretation is misplaced.

A literal reading of the elements of the offense justifies a broad interpretation to include all instances of corrupt conduct intended unlawfully to influence, impede, or otherwise obstruct the due administration of justice. Such an interpretation is consistent with the historical genesis of the offense in 18 U.S.C. section 1503,[1] which, prior to being amended in 1982,[2] provided punishment for

> [w]hoever ... corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede the due administration of justice....

This former language in section 1503 was a broad catch-all phrase "designed to meet any corrupt conduct in an endeavor to obstruct or interfere with the due administration of justice." *Falk v. United States*, 370 F.2d 472, 476 (9th Cir.1966) (quoting *United States v. Solow*, 138 F.Supp. 812,

---

1. Chapter 73 of Title 18 of the United States Code, 18 U.S.C. sections 101–1515, proscribes conduct and prescribes penalties under the general heading "Obstruction of Justice." Until 1982, section 1503 of this chapter, entitled "Influencing or injuring officer, juror or witness generally", prohibited influencing or intimidating "any witness, * * * any grand or petit juror, or [court] officer" in the discharge of his duty, or injuring any of them for having discharged his duty. The section also contained a residual clause prohibiting anyone from obstructing "the due administration of Justice."
*United States v. Hernandez*, 730 F.2d. 895, 898 (2d Cir.1984).

2. In 1982, however, congress enacted the Victim and Witness Protection Act, Pub.L.No. 97–291, 96 Stat. 1248 (1982), *reprinted in* 1982 U.S. Code Cong. & Ad.News (96 Stat.) 1248, to 'strengthen existing legal protections for victims and witnesses of federal crimes.' S.Rep. No. 532, 97th Cong., 2d Sess. 9, *reprinted in*

1982 U.S.Code Cong. & Ad.News 2515. By the new statute, congress removed from section 1503 all references to witnesses, leaving that section to protect jurors and court officers, and enacted a new section, section 1512, addressed specifically and in more detail to the protection of witnesses, informants, and crime victims from intimidation. By enacting section 1512 congress intended to remedy perceived inadequacies in the existing section 1503 by providing more extensive protection for witnesses and others. *Id.* at 2515, 2520–21. For example, section 1512 explicitly covers 'potential' witnesses and those witnesses whose testimony might not be admissible at trial, whereas section 1503 did not necessarily cover such witnesses. Moreover, unlike section 1503, which proscribed influencing witnesses by corruption, threats, or force, section 1512 extends as well to intimidation and harassment, thereby establishing a lower threshold of criminal activity. *Id.* at 2521. *Hernandez*, 730 F.2d at 898.

814 (S.D.N.Y.1956)). That the all-embracing approach in the federal sector was intended by paragraph 96b is not only evident in the literal language of the paragraph, but by reference to the various sections of the federal code [3] in the MCM's Analysis to the punitive Articles. MCM, Appendix 21, Analysis at A21–103 (1984).

■ Concluding that corruption lies at the heart of paragraph 96b, we believe that the acts of bribery, intimidation, misrepresentation, force or threat of force, as illustrated in paragraph 96c, are not exclusive but only examples of obstructing justice, referring generally to portions of the federal statute cited in footnote 3, *supra.* As such, we believe the language of paragraph 96b proscribes all corrupt conduct intended to influence, impede, or otherwise obstruct the due administration of justice within the context of the remaining elements of the offense, as prescribed, whether or not such conduct constitutes bribery, intimidation, misrepresentation, force or threat of force. *See United States v. Kellough,* 19 M.J. 871 (AFCMR 1985), where the Air Force Court of Military Review opined the offense of obstruction of justice was designed to insure that "all persons responsible for the administration of justice are protected against those who would interpose obstacles or impediments, or in any manner interrupt the proceedings." 19 M.J. at 873 (citing *Baker v. State,* 178 S.E.2d 278, 122 Ga.App. 587 (1970), *cert. denied* 401 U.S. 1012, 91 S.Ct. 1265, 28 L.Ed.2d 549 (1971)).

■ Applying our interpretation of paragraph 96b to the issue of whether Charge II and its specifications state offenses under Article 134, UCMJ, (obstructing justice), we conclude that the specifications allege each element of the offense either expressly or by fair implication. The specifications allege the appellant endeavored to get two separate witnesses to make untruthful statements to Naval Investigative Service (NIS) investigators at a time when he believed there would be criminal pro-

ceedings pending against him; that such endeavors were intended to impede the NIS investigation; and that the appellant's conduct was wrongful and in violation of Article 134. We believe the specifications allege by fair implication that such conduct is prejudicial and discrediting and that it involves corruption that was intended to influence, impede, or otherwise obstruct the due administration of justice. No more is required in alleging an obstruction of justice offense in violation of Article 134. Finally, we conclude that it is not necessary to actually obstruct justice, under Article 134, but only that the offender endeavor to do so, as indicated in paragraph 96c of the Manual.

## II & III

THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT OBSTRUCTED JUSTICE AND COMMITTED THE OFFENSE OF LARCENY.

In testing the sufficiency of the evidence, we will jointly address assignments of error II and III and apply the standard of review under Article 66(c), UCMJ, namely, whether on the basis of the entire record, there is evidence beyond a reasonable doubt establishing each element of the offenses, recognizing that in making such determinations the trier of fact saw and heard the evidence.

The Government's case rests substantially upon the testimony of Sharon D. Jacobs and Seaman Crystal P. Birts. Jacobs testified that she had lunch with Birts and the appellant in the hospital where they all worked, on 28 March 1985. After lunch, they proceeded to the Navy Exchange which was also located in the hospital. Jacobs went to the snack bar, Birts purchased cigarettes, and the appellant proceeded to the radio/camera area. As Jacobs and Birts exited the Exchange, the appellant came running up holding a box under his arm and said, "I got this camera

---

**3.** *See* 18 U.S.C. sections 1503 (influencing or injuring officer or juror generally); 1510 (Obstruction of criminal investigation); 1512 (Tampering with a witness, victim, or an informant); and 1513 (Retaliating against a witness, victim, or an informant).

Jay, why don't you hold this for me," referring to Jacobs. Jacobs declined the invitation and promptly walked away from Birts and the appellant, believing the appellant was up to no good. The same day, the appellant came to Jacobs' office and observed that Jacobs left the hospital in a hurry. Jacobs replied that she didn't want anything to do with it and further said, "That was quite stupid what you did." The appellant looked at Jacobs and left the office. Although Jacobs worked in security, she failed to inform authorities of the appellant's actions, not wanting to get involved, and, when questioned initially by NIS, denied any knowledge of the incident. Later, however, she told NIS the whole story after being advised that charges would be pressed against her if she did not tell the truth. Appellant later approached Jacobs and asked if she spoke to NIS. He further requested she not tell them anything that he had told her. Jacobs said she was not appellant's friend, only a social acquaintance, and really didn't care for his "big shot" attitude.

Birts, who also worked at security, was a close friend of the appellant and related substantially the same story as did Jacobs. She recalled eating lunch with the appellant and Jacobs and that the appellant followed them to the Exchange. The appellant ran up to her as she and Jacobs were leaving the Exchange with an unwrapped Pentax camera box under his arm and called out, "Chris wait up," referring to Birts, "I just walked out of the store with this camera." Birts also testified that the appellant asked Jacobs to take the camera which she declined to do. Later, after Jacobs departed, the appellant questioned Birts regarding whether she thought that Al Jones had observed him taking the camera and whether Jacobs would talk. Birts counselled the appellant to return the camera, but he declined. Birts advised her supervisor, Senior Chief Churchill, of the incident on the same day but requested to remain anonymous, as she did not want the appellant to become angry at her. Several days later, Birts told NIS the whole story, but did not tell Jacobs she spoke to NIS

because she wanted Jacobs to come clean without any prompting. In the meantime, appellant approached Birts and requested that she lie to NIS about the theft of the camera by telling NIS that the box under the appellant's arm was in fact a bag and that the appellant did not walk out of the Post Exchange with a camera. He instructed Birts that by sticking together, they could discredit Jacobs' story.

Introduced into evidence was the stipulated, expected testimony of an Exchange employee, Mrs. L.T. Godley, that a Pentax camera was missing from the Naval Hospital Exchange on 28 March 1985, and that it is still unaccounted for.

The appellant presented the testimony of Senior Chief Churchill, who testified that when Birts first contacted him about the theft of the camera, she said that a Naval Exchange warehouseman named Al Jones took a Pentax 35 millimeter camera from the store and gave it to a Navy enlisted person. Senior Chief Churchill, however, admitted he was not certain about Birts' communication. In her testimony, Birts denied mentioning the name of Al Jones to Senior Chief Churchill in that context, admitting only that she named Jones as the person in the Exchange with whom the appellant was talking. Senior Chief Churchill further acknowledged initially keeping Birts' name anonymous to protect her and delayed telling NIS about Birts' revelation in order to check out her story. However, he later told NIS that Jacobs and Birts could supply the information sought by the NIS in connection with the camera theft.

The appellant further presented the testimony of Hospitalman Kevin C. Keen, U.S. Navy, who recalled seeing the appellant, Jacobs, and Birts together on the day in question, but did not recall the appellant carrying anything that resembled a camera box. Keen denied that the appellant ever asked him to keep the camera.

 In concluding there was sufficient competent evidence of record supporting the finding of guilty beyond a reasonable

doubt, we have carefully reviewed the evidence and conclude the Government witnesses were credible despite Jacobs' admitted prior inconsistent statement and reluctance to get involved and Birts' alleged original report to Senior Chief Churchill that it was Al Jones who initially had the camera in his possession. We will not set aside findings of guilty sufficiently grounded in the credible evidence where the trier of fact rationally can reconcile such conflicting evidence consonant with a finding of guilty. *Collins v. United States,* 383 F.2d 296 (10th Cir.1967); *Jamerson v. United States,* 66 F.2d 569 (7th Cir.1933). Here, Jacobs' reluctance to initially get involved and her prior inconsistent statement are understandable, given the fact she was with the appellant before and after his criminal misconduct and didn't want to be associated with him. Once Jacobs realized she had everything to lose and nothing to gain by protecting a person she had little respect for, her decision to provide a complete statement to authorities was reasonable and prudent. The case against Birts having initially advised Senior Chief Churchill that it was Al Jones who had the camera, not the appellant, is premised solely upon Senior Chief Churchill's testimony. Senior Chief Churchill, whose efforts were misdirected from the beginning by not immediately providing NIS with the information he received from Birts, readily admits that he may have misunderstood Birts when she communicated to him the details surrounding the theft of the camera. On the other hand, Birts' testimony was consistent and credible, and unlike her supervisor, she did not hesitate in providing NIS with information. All she sought was anonymity because of her friendship with the appellant, whom she previously solicited to return the camera to proper authorities but to no avail. We see no evidence of any conspiracy against the appellant or a sincere desire on his part merely to cajole Jacobs and Birts into telling the truth to NIS—only a last-ditch attempt to provide the trial judge with a theory for acquittal, however unreasonable, should he be so disposed.

## IV

THE MILITARY JUDGE IMPROPERLY LIMITED EXAMINATION OF A DEFENSE WITNESS TO QUESTIONS CONCERNING THE CREDIBILITY OF GOVERNMENT WITNESSES.

■ At the outset we note the appellate defense counsel declined to fully brief the issue, citing *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982). We summarily deny the assignment of error as the record of trial provides neither a sufficient basis in fact nor law in support of such an allegation.

In affirming the findings of guilty and sentence, as approved on review below, we considered the statement of the appellant, submitted by appellate defense counsel as an appended document to the pleadings before the Court without benefit of further briefs, citing *United States v. Grostefon, supra,* and conclude that the matters addressed therein are substantially related to the original assignments of error and equally unpersuasive.

Senior Judge KERCHEVAL and Judge RAPP concur.